**Marlene CARMICHAEL, Personal Representative of the Estate of Monette Morgan, deceased, Appellant,**

v.

**Jack J. BELLER, M.D., and Norman Orthopaedic Clinic, Inc., Appellees.**

No. 81964.

Supreme Court of Oklahoma.

April 2, 1996.

Howard K. Berry, Jr., Oklahoma City, and Bill Wilson, Pauls Valley, for Appellant.

Russell L. Hendrickson, Haven Tobias, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, for Appellees.

LAVENDER, Justice.

We hold that a malpractice suit against a doctor and clinic for harm alleged to have occurred during treatment of a patient's right leg is not barred by a general release given to original tortfeasor(s) allegedly responsible for initially injuring the leg. Under the teachings of *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla.1995), to the extent the original tortfeasor(s), the doctor and clinic share a common liability for patient's injuries, 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA) applies, and because the involved release fails to name or otherwise specifically identify either doctor or clinic as a tortfeasor to be discharged, it is insufficient as a matter of law to discharge them from potential liability. Further, to the extent there is no common liability and the doctor and clinic are alone responsible for the harm (or some part thereof) caused by the negligent treatment, although the UCATA would not apply because of the lack of common liability, the same result would obtain. In such event, an independent and separate cause of action would exist against the doctor and clinic for the harm caused by the independent and intervening acts or omissions of the doctor and under no theory would the release at issue be considered a discharge of doctor or clinic. In view of our determinations, we reverse the decision of the trial court granting summary judgment to the doctor and clinic and vacate the memo-randum opinion of the Court of Appeals affirming that decision.

## PART I: STANDARD OF REVIEW.

 Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991). We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 683 P.2d 535, 536 (Okla.1984). Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

## PART II: FACTS AND PROCEDURAL HISTORY.

Appellant, Monette Morgan[1] somehow broke bones in her right leg, foot and/or ankle while in the stands of the Pauls Valley High School football stadium.[2] Initially, Morgan was transported to a local hospital emergency room. Thereafter, she was sent to Norman, Oklahoma where on the next day appellee, Jack J. Beller, M.D., who is alleged to be an employee or officer of appellee, Norman Orthopaedic Clinic, Inc., performed surgery on the leg. Beller performed additional surgeries on the leg and provided other treatment to it for about the next twenty-one (21) months, when in August 1988, he

1. Without objection from appellees, upon application advising that Morgan had died, an order was issued by the Court of Appeals in June 1995 substituting the personal representative of Morgan's estate as the party appellant in this appeal. We have been provided no information concerning the circumstances surrounding Morgan's death.

2. The record is not conclusive as to exactly what bones Morgan broke. The affidavit of appellee, Jack J. Beller, M.D., presented in support of appellees' motion for summary judgment, speaks about fractures to the right fibula and tibia. These are respectively, the shin bone (larger) and calf bone (smaller) in the lower leg below the knee. STEDMAN'S MEDICAL DICTIONARY 584 and 1600 (25th ed. 1990) (Illustrated); WEBSTER'S NEW COLLEGIATE DICTIONARY 422 and 1210 (1973). However, suffice it to say that the materials we have been presented mention the right leg, ankle and foot as possibly suffering injury or fracture(s). The inconclusiveness of the record on this point is immaterial to our decision.

performed a below the knee amputation of the right leg. The petition in this case alleges that Beller was negligent in performance of the surgeries and post-operative care, allowing osteomyelitis and staph infection to develop which resulted in the ultimate amputation.[3]

Prior to amputation Morgan sued the Pauls Valley Board of Education and Pauls Valley School District I–18, alleged owners and operators of the stadium, to recover damages for her injuries in a case filed in the Garvin County District Court. After amputation she sued appellees in Cleveland County. In August 1989, Morgan dismissed without prejudice the Cleveland County case. In October 1989, she settled with the school entities in exchange for twenty-five thousand dollars ($25,000.00). She signed a release which specifically named both school entities. Neither appellee contributed any part of the twenty-five thousand dollars ($25,000.00), nor was either named or otherwise specifically identified in the release. However, immediately subsequent to the naming of the school entities (and their agents, servants and employees) as the discharged parties, the release did contain the following broad language purportedly also discharging:

> any and all others of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or in any way growing out of, any and all known and unknown personal injuries, including claims for loss of consortium and claims for any other injuries or damages resulting or to result from an accident that occurred on or about the 31st day of October, 1986 at the football stadium at the Pauls Valley High School, in Pauls Valley, Oklahoma, as specifically alleged in, but not limited to, the allegations contained in a Petition filed in Garvin County, Case No. C–87–153.

After signing the release Morgan again filed suit against appellees in Cleveland County alleging Beller was negligent in his treatment of the leg. Appellees moved for summary judgment setting up the release as a discharge of all potential tortfeasors that might be liable for damages associated with or resulting from the accident at the football stadium. Appellees relied not only on the broad, seemingly all-inclusive language of the release, but on the doctrine the release or discharge of an original tortfeasor from liability will also discharge a physician who allegedly negligently aggravates the initial injuries. Appellees contended such was the law in Oklahoma both prior and subsequent to adoption of the UCATA, and also that the record, assuming Beller was negligent in his treatment, conclusively shows the school entities are liable for harm resulting from the treatment, i.e. a common liability exists among the school entities, Beller and the clinic. Included with the materials supporting the motion for summary judgment was an affidavit of Beller where he stated that all of his treatment of Morgan's leg was in an attempt to repair the initial fractures or, in the case of the amputation, to deal with the fractures which never healed and prevented Morgan from walking—the amputation allowing her to procure a prosthetic device so that she could bear weight on her right leg.

Morgan opposed summary judgment arguing in part that under § 832(H)(1) the release was not sufficient to discharge appellees. Affidavits were submitted from Morgan, one of her attorneys and the attorney for the school entities, all essentially stating there was no intention to release appellees, but only the school entities and their employees. It was also argued the release could not be considered to discharge appellees because two distinct injuries were involved and, therefore, two separate causes of action, one against the school entities and one against the appellees, and each were responsible independently. Morgan submitted an affidavit from another physician, Charles E. Workman, M.D. who opined, after examining Morgan and reviewing the medical records, that the numerous subsequent surgeries by Beller created "new, separate, additional and distinct injuries which caused the amputation and [Beller's acts or omissions] w[ere] not simply the treatment offered to deal with the

---

**3.** Osteomyelitis is defined in WEBSTER'S NEW COLLEGIATE DICTIONARY 806 (1973) as, "an infectious inflammatory disease of bone marked by local death and separation of tissue."

fractures in [Morgan's] right lower leg which had never healed." The trial court granted summary judgment in favor of appellees based on the release.

The Court of Appeals affirmed, concluding the UCATA did not apply because appellees and the school entities were not "joint" tortfeasors. Instead, they applied the pre-UCATA case of *Farrar v. Wolfe*, 357 P.2d 1005 (Okla.1960), which held there cannot be recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for negligent aggravation of such injuries by improper treatment, after settlement with full release of the tortfeasor who caused the injuries. We previously granted certiorari.

## PART III: WHEN A COMMON LIABILITY EXISTS AMONG MULTIPLE TORTFEASORS § 832(H)(1) OF THE UCATA APPLIES.

 Under our law the general rule is that an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, so long as the injured person exercises good faith in the choice of physicians. *Atherton v. Devine*, 602 P.2d 634, 636 (Okla.1979); *Smith v. Missouri, K. & T. Ry. Co.*, 76 Okla. 303, 185 P. 70, 73–74 (1918). This rule is founded on sound reasons of public policy and is merely a particular application of the rule that a tortfeasor whose negligence causes injury is also liable for any subsequent injury or reinjury that is the proximate result of the original wrongdoing, except where the subsequent injury or reinjury is caused by either the negligence of the injured person, or the independent or intervening act of a third person. *Atherton, supra*, 602 P.2d at 636–637.[4] In that injuries suffered as a result of the medical treatment were considered to have been proximately caused by the original tort, in this sense, the physician and original wrongdoer caused a "single" injury, and were, therefore, jointly liable to the victim. *Summey v. Lacy*, 42 Colo.App. 1, 588 P.2d 892, 893 (1978). This is so even though the physician can be said to be a successive tortfeasor, rather than a joint or concurrent one. *Radford–Shelton, Etc. v. St. Francis Hospital, Inc.*, 569 P.2d 506, 509–510 (Okla.Ct.App., Div. 1, 1976); *See also Fieser v. St. Francis Hospital and School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973) (recognizing that doctors and hospitals treating tort victim for injuries caused by original wrongdoer are successive tortfeasors).

Prior to adoption of the UCATA we held in *Farrar v. Wolfe, supra*, there could be no recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for aggravation of such injuries by improper treatment after a settlement with full release of the tortfeasor who caused the injuries. 357 P.2d at 1006, *First Syllabus*. Of course, the reasoning behind the rule was that the original tortfeasor was liable for additional bodily harm resulting from efforts of third persons to render aid to the injured party and, therefore, to allow recovery from both original tortfeasor and physician would permit double recovery. *Birmingham v. Berryhill*, 557 P.2d 910, 911 (Okla.1976). The *Farrar* rule was consistent with and a special application of the general common law principle that the release of one tortfeasor liable to a plaintiff ordinarily releases other tortfeasors jointly liable [*Summey v. Lacy*, 588 P.2d at 893], which we held in *Moss v. City of Oklahoma City, supra*, the UCATA was intended to abrogate. 897 P.2d at 283–287.

 In 1980 the Oklahoma Legislature amended the UCATA by adding subsection (H)(1) and (2) to § 832. As pertinent here subsection (H)(1) concerns when a release or

---

4. *Atherton v. Devine*, 602 P.2d 634 (Okla.1979), itself did not involve injuries caused by the subsequent treatment of a physician, but the question answered there was whether the original wrongdoer could be held liable for additional injuries suffered when, after an initial automobile accident, a second accident occurred when the victim was being transported by ambulance to a hospital. We held the original wrongdoer could be held liable and in so doing we recognized no material distinction between medical treatment required because of a tortious act, and transportation required to reach an institution where medical treatment is available. *Id.* at 636–637.

similar document will discharge from liability tortfeasors who are not parties to the release. Subsection 832(H)(1) and (2) provide *in toto* as follows:

H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.[5]

The United States Court of Appeals for the Tenth Circuit recognized in *In re Jones*, 804 F.2d 1133, 1142–1143 (10th Cir.1986), that § 832(H) did not require that parties act in concert to be applicable, but merely that multiple tortfeasors cause or contribute to the same injury sustained by the plaintiff. The applicability of § 832(H), thus, turns on whether there is a common liability to the plaintiff among the tortfeasors [*See Price v. Southwestern Bell Telephone Co.*, 812 P.2d 1355, 1358–1359 (Okla.1991)], i.e. in the words of § 832(H), "two or more persons [are] liable in tort for the same injury or the same wrongful death". Thus, if the original tortfeasors here (i.e. the school entities) were liable to Morgan for some or all of the aggra-

vated or additional injuries (assuming as true there were some) allegedly caused by the negligence of appellees in treating her leg, foot and/or ankle under the doctrine espoused in *Atherton v. Devine, supra* and *Smith v. Missouri, K. & T. Ry. Co., supra*, that an original tortfeasor, negligently causing injury to a third person, is liable for the negligence of a physician who treats the injured person where negligent treatment results in aggravation of or increasing the injuries, to that extent the UCATA would apply because a common liability would exist among the tortfeasors—the school entities, Beller and clinic.

As is obvious, *Farrar v. Wolfe, supra*, a decision that predated passage of § 832(H) of the UCATA by approximately twenty (20) years, has accordingly been overruled by that Act.[6] The very purpose behind the *Farrar* rule—to prevent double recovery [*Birmingham v. Berryhill, supra*, 557 P.2d at 911]—is no longer applicable after passage of § 832(H) because to the extent the original tortfeasor is liable for the malpractice of the physician, a common liability exists and assuming the settlement proceeds (or some portion thereof) represent payment for such common liability, § 832(H)(1) would mandate some deduction from any recovery against the physician.[7]

In *Moss v. City of Oklahoma City, supra*, we held that in order to comply with the dictates of § 832(H)(1) a release given to a tortfeasor liable to an injured party will discharge other tortfeasors potentially liable for

---

**5.** Section 832(H)(1) was amended in 1995 in pertinent part to read, "[i]t does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named...." See 12 O.S.Supp.1995, § 832(H)(1). As can be seen, the phrase following the word unless was changed from "its terms so provide" to "the other tort-feasor is specifically named".

**6.** We are not the first court to recognize that the UCATA has overruled the doctrine that the release of an original tortfeasor operates as a discharge of the treating physician. *See e.g. Summey v. Lacy*, 42 Colo.App. 1, 588 P.2d 892, 893–894 (1978), where the Colorado Court of Appeals recognized this import of the UCATA.

**7.** We note that even assuming a common liability exists among the school entities, Beller and the

clinic for any negligent medical treatment, to the extent a rational division can be made between the original injuries and the enhancement thereof, the school entities alone would be liable for the original injuries. In other words, although the original tortfeasor might be liable for the entire harm, the health care provider who negligently aggravates or enhances the initial injuries, is only liable for the additional harm caused by the negligent treatment. *Lujan v. Healthsouth Rehabilitation Corp.*, 120 N.M. 422, 902 P.2d 1025, 1030 (1995). We are not asked to decide here any issue(s) concerning possible deduction of the school entity settlement from any judgment that might eventually be obtained against appellees and, therefore, we do not decide any such issue(s) here.

the same injury or wrongful death only if these other potential tortfeasors are named or otherwise specifically identified in the release. 897 P.2d at 282. The release at issue in this case, although not identical to the ones involved in *Moss*, is strikingly similar. It contains language releasing specifically named entities and their employees, followed by broad boilerplate language releasing all others from any and all claims resulting or to result from the accident at the football stadium. Neither appellee is named or otherwise specifically identified in it. Thus, if § 832(H)(1) is applicable here because under *Atherton v. Devine, supra* and *Smith v. Missouri, K. & T. Ry. Co., supra,* the original tortfeasor(s), under any factual scenario, are liable along with appellees for part or all of the negligent treatment of the leg, *Moss* controls and would lead to the conclusion the release is insufficient to discharge either appellee.[8]

The recognition that *Moss* controls in a situation involving common liability among original tortfeasor(s) and treating physician(s) would normally end the matter and lead to a reversal of the trial court's grant of summary judgment in favor of appellees. However, although the summary judgment must be reversed, we believe it is incumbent upon us to discuss an alternate reason for reversal because under the record as currently constituted it may be that the original tortfeasor(s) are not liable for some or all of the harm allegedly caused by the acts or omissions of Beller in treating Morgan's leg. We must, therefore, determine the effect of the release in such a situation because § 832(H)(1) of the UCATA would not apply to the extent no common liability exists between the original tortfeasor(s) and appellees.

## PART IV: WHETHER COMMON LIABILITY EXISTS HERE INVOLVES MATERIAL DISPUTED QUESTIONS OF FACT.

▋ First off, we must note that appellees' position on appeal is that the instant record points to only one answer to the question of whether the school entities are liable for all of the harm resulting from Beller's treatment of Morgan, to wit: they are and, thus, a common liability exists between original tortfeasor(s), doctor and clinic. If this record was actually conclusive on this point our discussion in **PART III** would be dispositive—§ 832(H)(1) and *Moss* would control, and the release deemed insufficient to discharge any tortfeasors other than the school entities. However, at least some further discussion is in order because we believe appellees are incorrect in their assertion that this record indisputably leads to the conclusion the school entities would be liable for all harm resulting from the treatment afforded to Morgan by Beller, an assertion contested below and on appeal by Morgan.

Our law that an original tortfeasor causing initial injury is liable for harm suffered at the hands of a physician providing treatment for the injury is consistent with the RESTATEMENT (SECOND) OF TORTS § 457 (1965). *Atherton v. Devine, supra,* 602 P.2d at 636 n. 1, in fact, quoted § 457 which provides:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.

As noted in **PART III** the rule as to a physician is merely a particular application of the rule that a tortfeasor whose negligence

---

**8.** Appellees' argument to the effect that *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla.1995), should not apply to the instant release because Morgan was represented by counsel and had the advice of counsel prior to executing the release is without merit. *Moss* did not turn on whether a releasor had the advice of counsel prior to signing a release discharging named alleged tortfeasors, followed by broad boilerplate language seemingly releasing all other persons that might also be liable for the same injury or wrongful

death. Our decision in *Moss* turned on our interpretation of the UCATA and the purpose behind § 832(H)(1), i.e. abrogating the common law rule that the release of one tortfeasor released all others jointly liable. 897 P.2d at 286–287. Following appellees' suggestion would have us carve out some exception to the UCATA for releases where the releasor had a lawyer, without any hint in the language of the UCATA that such an exception was intended by the Legislature. This we decline to do.

causes injury is also liable for any subsequent injury or reinjury that is the proximate result of the original wrongdoing, except where the subsequent injury or reinjury is caused by either the negligence of the injured person, or the independent or intervening act of a third person. *Atherton, supra,* 602 P.2d at 636–637.

Comments d and e to § 457 and the examples thereto make clear that the original tortfeasor is liable only for the risks normally inherent in submitting to medical, surgical or hospital treatment, not harm caused by extraordinary misconduct of health care providers or harm outside the risks which are incidental to treatment made necessary by the original tortfeasors' wrongdoing. Thus, the original wrongdoer would not be liable for the subsequent mistreatment where a nurse, unable to bear the sight of the victim's intense suffering, gives an injection of morphine in disobedience of the surgeon's instructions and so excessive she knows it might be lethal. § 457, Comment d, Illustration 4. Nor would the original tortfeasor be liable should the victim take advantage of a hospital stay to have an unrelated procedure performed, e.g. victim's initial injury is a broken leg, but examination reveals an unrelated hernia for which surgery is negligently performed. § 457, Comment e, Illustration 6.

*Atherton, supra,* 602 P.2d at 637, in discussing proximate cause and reasonable foreseeability in the context of whether an original tortfeasor is liable for subsequent harm brought on by those coming to the aid of an injured person, recognized the issue will many times involve questions of fact for the jury's consideration. This is so because:

> Causation traditionally lies in the realm of fact, not law. In an action for injuries caused by the defendant's negligence, it is a jury question whether the injurious consequences resulting from the negligence could have reasonably been foreseen or anticipated. Likewise, where the evidence is conflicting or where reasonable men might draw different conclusions, the question of reasonable foreseeability of an intervening act or agency causing subsequent injury is to be determined by the jury. Foreseeableness becomes a question of law for the court only when one reasonable conclusion can be drawn from the facts. (footnotes omitted).

*Id.*

In the present case Morgan presented an affidavit from another physician who opined that "the numerous subsequent surgeries created new, separate, additional and distinct injuries which caused the amputation and [Beller's acts or omissions] w[ere] not simply the treatment offered to deal with the fractures in [Morgan's] right lower leg which had never healed." As seen by the above discussion, under our decision in *Atherton, supra* and § 457 of the RESTATEMENT (SECOND) OF TORTS, there may be situations where the original tortfeasor is not liable for the malpractice of the health care provider because the misconduct of the latter is so extraordinary that it could no longer be said that the original wrongdoing which caused an initial injury is the proximate cause of the harm resulting from the subsequent malpractice. Instead, the factual circumstances may support the view that the health care provider(s) acts or omissions are independent and intervening ones which have caused harm not reasonably foreseeable by the original tortfeasor.

In our opinion, viewing the record in the light most favorable to Morgan, leads to the conclusion that this record is simply not sufficient to tell where Beller's treatment of Morgan falls. Although Beller contends in his affidavit all treatment was in an effort to either repair the initial fractures or deal with them by amputation because they had not properly healed (thus allowing Morgan to obtain a prosthetic device so she could bear weight on her right leg), given the conflicting affidavit of another doctor (Charles E. Workman, M.D.), no decision can presently be made as to whether Beller's treatment was such that the general rule favoring original tortfeasor liability would apply. On this record, a factual question exists in such regard because the reasonable inference from the affidavit of Workman is that Beller's treatment may have in some way been extraordinary, something which may not have been within a normal effort to render aid to Mor-

gan for the injuries suffered at the football stadium, notwithstanding appellees' protests otherwise.

Thus, if eventually it turns out that Beller (and the clinic) are alone liable for some or all of Morgan's injuries resulting from Beller's treatment, although the UCATA and *Moss* would not apply because of the lack of common liability for the same injuries, the release in any event would not discharge appellees. In such event, an independent and separate cause of action would exist against the doctor and clinic for the harm caused by the independent and intervening acts or omissions of the doctor and under no theory would the release at issue be considered a discharge of doctor or clinic. Such injuries or harm could no longer be viewed as proximately caused by the wrongdoing of the school entities and no longer could be said to result from the accident occurring at the football stadium where Morgan originally injured her leg. In that appellees do not argue, and we do not believe, any language in the release could be construed to have as its intent the discharge of appellees in such a situation, the potential that common liability does not exist as to all harm caused by Beller's treatment, accordingly, provides another basis to reverse the trial court's grant of summary judgment in favor of appellees, even assuming § 832(H)(1) of the UCATA does not apply.

## CONCLUSION

To the extent a doctor and clinic are liable with an original tortfeasor(s) for the same injuries, i.e. the health care providers and original tortfeasor(s) share some common liability for injuries suffered during medical treatment necessitated by original tortfeasor wrongdoing, § 832(H)(1) of the UCATA applies to the question of whether a release given to the original tortfeasor(s) will also discharge the doctor and clinic from potential liability. A release given to the original tortfeasor(s) which fails to name or otherwise specifically identify the health care providers as tortfeasors to be discharged, but instead names only the original tortfeasor(s) followed by broad boilerplate language seemingly releasing the entire world from any and all claims associated with the initial accident-producing injury, is insufficient to discharge the health care providers from potential liability under the teaching of *Moss v. City of Oklahoma City, supra. Farrar v. Wolfe, supra,* a decision holding otherwise, predated § 832(H) by approximately twenty (20) years and it has been overruled by that statutory provision. Thus, to the extent a common liability to Morgan exists among the school entities and appellees, § 832(H)(1) applies and the release is insufficient to discharge doctor and clinic.

Further, if no common liability exists among the original tortfeasor(s) and health care providers for some or all of the injuries or harm caused by the negligent treatment by virtue of some exception to the rule that an original tortfeasor is liable for all reasonably foreseeable injuries caused by negligent medical treatment, and the health care providers are alone liable for some or all of the injured person's injuries, although the UCATA would not apply to such extent because of the lack of common liability, the same result would obtain under the release at issue in this case. In such event, an independent and separate cause of action would exist against the health care providers for the harm caused by their independent and intervening acts or omissions and under no theory would the release at issue be considered a discharge of the health care providers. Under this latter scenario the release here would not discharge Beller and the clinic because the harm they would have caused could not then be said to result from the original accident at the football stadium which necessitated medical treatment.

Accordingly, the opinion of the Court of Appeals is **VACATED** and the judgment of the trial court granting summary judgment to appellees is **REVERSED** and this matter is **REMANDED** to the trial court for further proceedings.

KAUGER, V.C.J., and HODGES, SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, C.J., and WATT, J., disqualified.