2006 OK CIV APP 13

**Brodgerick K. SIMMONS, Plaintiff/Appellant,**

v.

**CORRECTIONS CORPORATION OF AMERICA, Defendant/Appellee.**

**No. 101,207.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 17, 2006.

Brodgerick K. Simmons, Pro se.

Darrell Lee Moore, Julia Lynn Neftzger, Pryor, OK, for Defendant/Appellee.

Opinion by BAY MITCHELL, Presiding Judge.

¶1 Plaintiff/Appellant, Brodgerick K. Simmons (Simmons), an incarcerated inmate, seeks review of the trial court's order sustaining summary judgment in his lawsuit against Defendant/Appellee, Corrections Corporation of America, Inc. (CCA). Based on our review of the record on appeal and applicable law, we affirm.

¶2 The essential facts are undisputed. Simmons is a prisoner in the custody of the Oklahoma Department of Corrections (ODOC). At all times relevant to his allegations in this lawsuit, he was incarcerated at the Cimarron Correctional Facility (Cimarron) in Cushing, Oklahoma. CCA owns and operates Cimarron under contract with ODOC.

¶3 While at Cimarron, Simmons participated in a Prison Industry Enhancement (PIE) certified work program through which Cimarron prisoners processed merchandise for interstate transport on behalf of Jacobs Trading Company. Simmons, who had computer skills, worked in the program as an office clerk beginning March 18, 1998. CCA allegedly characterized Simmons as an untrained stock clerk or warehouse worker for purposes of determining the applicable prevailing wage rate, paying him $5.15 per hour. Simmons insists the prevailing wage rate for office clerks was between $7.88 and $8.41 per hour and demands CCA remunerate him accordingly for the period of his participation in the program, which ended at some point in September 2000.

¶4 At all times relevant to this lawsuit, CCA had a grievance policy in place for use by inmates confined at Cimarron, as required by its contract with ODOC. CCA's Inmate/Resident Grievance Procedures encourage inmates to first attempt to resolve questions, disputes, and complaints informally through a "Request to Staff" form. If not resolved, prisoners may complete and file an Inmate/Resident Grievance Form. If dissatisfied with the grievance officer's decision, inmates may appeal to the Warden/Administrator of the facility for final review.

¶5 On May 23, 2001, Simmons submitted two "Request to Staff" forms—one to CCA's Industry Coordinator at Cimarron and one to CCA's Assistant Warden at Cimarron—charging CCA committed wage fraud by failing to pay him the prevailing wage rate while he was employed as an office clerk in the PIE program. After failing to receive responses to these requests, Simmons submitted another "Request to Staff" form to CCA's Programs Coordinator at Cimarron on September 7, 2001, reasserting his wage fraud claim. Although CCA again failed to respond, ODOC's PIE Coordinator contacted Simmons by letter dated September 20, 2001, in which he stated:

I understand your concern about pay to which you feel you and others are entitled. Please be assured that the Warden and his staff at Cimmaron Correctional Facility are in compliance with policies and directives concerning this issue.

A wage determination from the proper authorities is expected in the near future. After receipt of that determination, you and others employed in industry programs at CCF for the affected period will receive any supplement pay due. Of course, that pay will be subject to the withholding criteria stated in policy.

¶6 After receiving this letter, and without first filing a grievance on the issue, Simmons initiated a class-action lawsuit against CCA in the United States District Court for the Western District of Oklahoma on October 25, 2001, asserting a variety of claims including wage fraud. On December 29, 2003, the federal court entered judgment against Simmons, holding he had no right of action under 18 U.S.C. § 1761, dismissing his 42 U.S.C. § 1981 claim, and declining to exercise supplemental jurisdiction over his state law claims.

¶7 Simmons filed his petition in this action with the District Court of Tulsa County on March 10, 2004, within the one-year deadline set by Oklahoma's savings statute, 12 O.S. 2001 § 100. Simmons alleges CCA failed to pay him appropriate wages for his PIE program work at Cimarron and asserts claims of fraud, deceit, breach of contract, improper training and supervision, negligence, and civil

conspiracy. CCA moved for summary judgment based on Simmons's failure to exhaust available administrative remedies. Simmons contends the principle of equitable estoppel prohibits CCA from asserting this defense because CCA's policies and procedures restrict access to the administrative process, rendering it inadequate, ineffective, and futile. The trial court granted CCA's motion for summary judgment and Simmons filed the present appeal.[1]

¶ 8 We will affirm the trial court's grant of summary judgment if no genuine controversy exists as to any material fact and the movant is entitled to judgment as a matter of law. 12 O.S.2001, ch. 2, app.1, rule 13; *see also Sellers v. Oklahoma Publ'g Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. In evaluating the trial court's grant of summary judgment on appeal, we review the evidence in the light most favorable to the nonmovant. *See Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

■ ¶ 9 In Oklahoma, inmates "in the custody of the Department of Corrections shall completely exhaust all available administrative remedies on all potential claims against the state, the Department of Corrections, or an employee of the state or the Department of Corrections prior to initiating an action in district court against the Department." 57 O.S.2001 § 564. Simmons argues this provision does not apply to inmates housed in private prisons such as CCA. He does not dispute, however, that CCA operates Cimarron under contract with ODOC; its complaint procedures mirror those ODOC uses in state-run facilities; and CCA's grievance process is in place pursuant to ODOC requirement.

¶ 10 In any event, where an inmate initiates an action "against *any person, party or entity,* the state, the Department of Corrections, another state agency, or political subdivision," a trial court may dismiss it with or without prejudice for failure to exhaust all available administrative and statutory remedies prior to filing. 57 O.S.2001 § 566(A)(1) (emphasis added). We thus hold inmates of private prisons operated under contract with ODOC are equally required to exhaust administrative remedies prior to initiating legal actions against prison-operating authorities.

■ ¶ 11 Simmons next asserts CCA's grievance process was not "available" to him as an administrative remedy because it bars inmates from filing grievances on "matters that are in the course of litigation." Because he had already initiated a lawsuit regarding his wage fraud claims, and CCA would have rejected any related grievances on the matter, Simmons argues CCA's grievance procedure was inadequate, ineffective, and futile. His circular reasoning in this regard fails to support his cause on appeal. Simmons may not rely on his own precipitous actions to relieve him of his obligation to exhaust his administrative remedies before filing a lawsuit.

¶ 12 Moreover, Simmons's records from Cimarron demonstrate his familiarity with the grievance process. During his confinement at Cimarron, he filed several Requests to Staff, followed by corresponding Grievance Forms, regarding issues as varied as medical disbursements, charges for postage, and the whereabouts of personal property. Despite his evident familiarity with these complaint procedures, Simmons failed to follow up the three Requests to Staff he submitted regarding the wage-fraud issue by filing a related Grievance Form prior to initiating the present action against CCA.

¶ 13 Based on the foregoing, we conclude Simmons was obligated to exhaust all available administrative remedies before initiating the present action against CCA but failed to do so. Accordingly, we AFFIRM the trial court's grant of CCA's motion for summary judgment against Simmons.

¶ 14 AFFIRMED.

ADAMS, J. and BUETTNER, C.J., concur.

---

1. The parties submit this appeal without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup. Ct. R. 1.36, 12 O.S.2001, Ch 15, App.