2007 OK CIV APP 6

**Donna MILROY, Plaintiff/Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant/Appellee.**

**No. 102,044.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 19, 2006.

Certiorari Denied Jan. 9, 2007.

923

Richard D. Gibbon, Gibbon, Barron & Barron, P.A., Tulsa, for Plaintiff/Appellant.

Galen L. Brittingham, Marthanda J. Beckworth, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, Karl M. Tilleman, Steptoe & Johnson, Phoenix, AZ, for Defendant/Appellee.

JOHN F. FISCHER, Judge.

¶ 1 Plaintiff appeals from the Trial Court's order granting summary judgment to her automobile liability insurer in her action claiming breach of contract, breach of the duty of good faith and fair dealing and abuse of process. The appeal is assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp.2002, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND FACTS

### I. The Underlying Personal Injury Action

¶ 2 The summary judgment record reveals the following. On the afternoon of January 20, 1998, Plaintiff Donna Milroy was involved in an automobile collision with a vehicle driven by Barbara Lewis. Milroy rear-ended Lewis's vehicle as it was stopped at a traffic light. Milroy acknowledged that she was talking on her cell phone at the time of the accident. The investigating officer cited Milroy for inattentive driving but found no improper conduct on the part of Lewis.

¶ 3 The collision did not cause major damage to either vehicle, and neither Lewis nor Milroy requested medical treatment at the accident scene. However, later that afternoon, Lewis telephoned an attorney who had represented her in an automobile accident two years earlier, and he advised her to seek medical treatment. In the early evening, Lewis received treatment at a hospital emergency room for neck pain and numbness and tingling in her fingers. Both Milroy and Lewis subsequently sought chiropractic treatment. Coincidentally, they both received treatment at the same chiropractic clinic.

¶ 4 At the time of the accident, Milroy was a named insured under an automobile insurance policy issued by Allstate Insurance Company. The policy had liability limits of $100,000 per person for each occurrence. Lewis retained an attorney to pursue her personal injury claim against Milroy. On August 31, 1998, Allstate's claims representative, Lori Porter, first offered $500 to settle Lewis's claim during a telephone conversation with Lewis's attorney. Allstate made this offer before receiving any supporting medical documentation regarding Lewis's claim for damages. Lewis rejected the settlement offer.

¶ 5 In a letter to Lori Porter dated October 27, 1999, Lewis's attorney set forth the details of Lewis's claim for damages. He submitted medical records and an itemization of medical bills totaling $2,599.15. He advised Porter that it was the treating chiropractor's opinion that Lewis had sustained injuries to the ligaments in her neck and low back that were "permanent [in] nature" and would require "care in the future." He also advised Porter that his client had authorized him to settle her claim for $8,000. Allstate declined to settle because it believed the offer exceeded the value of Lewis's claim.

¶ 6 Lewis's attorney filed a small claims action on her behalf on January 20, 2000, seeking damages in the amount of $4,499.99. On receipt of the suit papers, Lori Porter wrote a letter to Milroy and advised her, among other things: "The suit is being assigned to defense counsel who will be in contact with you. It is your privilege if you wish to have your personal attorney, at your own expense, cooperate with the above assigned counsel in the defense of this lawsuit."

¶ 7 By letter dated February 2, 2000, attorney Rick Horton[1] advised Milroy that he would be defending the action Lewis had filed against her. The letter stated:

> I have been requested by the claims office of Allstate Insurance Company to defend you in the above-entitled lawsuit.
>
> I am a salaried employee of Allstate, selected to handle the defense of lawsuits brought against Allstate insureds such as yourself. Though I am an Allstate employee, I am required to exercise my independent professional judgment so that your interests are fully protected.

Horton cautioned Milroy against discussing the case with anyone other than her personal attorney, Allstate or his office.[2]

¶ 8 Upon motion by Horton, the judge in the small claims court transferred the case to the civil docket,[3] and ordered Lewis to file a

---

1. The letterhead reads: "Law Office of Steven Alan Crittenden, Staff Counsel—Allstate Insurance Company." Horton was one of four attorneys listed on the letterhead.

2. Nevertheless, it would be revealed later that Milroy spoke with Lewis regarding her condition when they saw each other in the chiropractor's office.

3. On motion by the defendant and with deposit of the specified costs, a small claims action may, "in the discretion of the trial court," be transferred from the small claims docket to another docket of the court. 12 O.S.2001 § 1757. If the

petition in conformance with the standards of the Oklahoma Pleading Code. When she filed her petition in district court, Lewis did not change the amount of her demand for judgment—it remained at $4,499.99. However, she asserted that the injuries she sustained "resolved with treatment and she was released from care for these injuries on May 13, 1998." She claimed "no permanent injury or impairment as a result of this collision."[4] The answer Horton filed on behalf of Milroy alleged the affirmative defenses of (1) unavoidable accident, (2) sudden emergency, (3) pre-existing health problems of Lewis, and (4) reasonableness and necessity of Lewis's medical treatment.

¶ 9 During the course of the litigation, the parties' discovery requests included Lewis's service of interrogatories on Milroy and a request by Milroy that Lewis undergo an independent medical examination. Horton filed an offer to allow judgment to be taken against Milroy, pursuant to 12 O.S.2001 § 1101, in the amount of $625, which sum was the amount of her medical treatment less the charges for chiropractic treatment. Lewis declined the offer. The case proceeded to trial.

¶ 10 Following a two-day trial in April 2001, the jury returned a verdict in favor of Lewis and awarded her damages in the amount of $2,599.15, the exact amount of her medical expenses as set forth in the pre-litigation settlement letter dated October 27, 1999. There was some delay in the filing of judgment, but Allstate issued payment of the judgment on June 27, 2001. The docket sheet indicates that, on Milroy's behalf, Horton filed a Motion to Settle Journal Entry and Abate Post Judgment Interest on July 13, 2001.

¶ 11 On October 24, 2001, Lewis filed a motion to recover attorney fees in her action in the amount of $12,606.25 and costs in the

amount of $989.98 pursuant to section 1757 of the Small Claims Act. However, at the hearing on this motion held November 14, 2001, Lewis's counsel additionally argued entitlement to fees under 12 O.S.2001 § 2011, claiming that Allstate had protracted the litigation and refused to make a reasonable settlement offer, thus unnecessarily increasing the attorney fees Lewis incurred in pursuing her claim against Milroy. Without advising Horton of his intentions, Lewis's counsel called Milroy as a witness and questioned her regarding the affirmative defenses Horton raised and his representations to the Trial Court about her inability to be present at one of the scheduled trial dates.[5] Lewis's counsel arranged Milroy's appearance at the attorney fee hearing through her personal attorney.

¶ 12 The Trial Court in the personal injury action awarded Lewis a $3,400 prevailing-party attorney fee and costs in the amount of $383.73, but did not consider the alleged section 2011 claim that she attempted to assert for the first time at the attorney fee hearing. Journal entry of judgment reflecting the jury verdict in favor of Lewis was entered on December 17, 2001, and the Order for Attorney Fees and Costs was entered on December 28, 2001. Allstate paid the fees and costs promptly.

## II. Milroy's Action Against Allstate

¶ 13 Meanwhile, on September 21, 2001, long before all of the issues in the Lewis personal injury action had been resolved, Milroy filed her petition in this action alleging that Allstate had breached its contract with her, violated its duty of good faith and fair dealing and committed acts in the course of the Lewis litigation constituting an "abuse of process." According to Milroy, Allstate consistently placed its interests ahead of hers. It unreasonably refused to settle and

---

plaintiff ultimately prevails in an action so transferred, a reasonable attorney's fee shall be allowed to the plaintiff and taxed as costs in the case. *Id.*

4. This assertion conflicts with those which Lewis's attorney made regarding her condition in the October 1999 settlement letter that he wrote to Allstate's claim representative.

5. Lewis's personal injury case was set for jury trial on September 21, 2000, but eventually passed to February 14, 2001, after several jury trial sounding dockets. On the February 14 trial date, the attorneys appeared and the case was passed to April 4, 2001.

unnecessarily forced her to endure a protracted legal battle. Milroy claimed Allstate wrongfully caused her to suffer inconvenience and distress by removing Lewis's lawsuit from small claims to district court. Milroy also claimed that Allstate mistreated Lewis by unnecessarily requesting and subjecting her to an independent medical examination because, through her discussions with Lewis at the chiropractor's office, she thought it clear that Lewis was injured in the accident. Milroy believed that, when the examining physician determined that Lewis had suffered an aggravation of a pre-existing injury, Allstate should have offered more than $650 to settle the claim.

¶ 14 On September 1, 2004, Allstate sought summary judgment on all of Milroy's theories of recovery. Following extensive briefing by the parties, and a lengthy hearing, the Trial Court granted summary judgment to Allstate.

¶ 15 Milroy appeals. Although she raises thirteen allegations of error in her petition in error, they can be summarized as a contention that the Trial Court erred in granting summary judgment because issues of material fact remained in dispute regarding her claims against Allstate.

### STANDARD OF REVIEW

¶ 16 On review of a trial court's order granting summary judgment, this Court, like the lower court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is any genuine issue of material fact. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the decision turns on purely legal determinations, *i.e.,* whether one party is entitled to judgment as a matter of law because there are no disputed material factual questions." *Id.* "Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo.*" *Id.* On *de novo* review, this Court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the summary judgment record. *Id.* We

will view all inferences and conclusions to be drawn from the evidentiary materials in the light most favorable to the non-moving party. *Id.* We will affirm the grant of summary judgment to the defendant when the evidentiary materials tendered to the trial court reveal no dispute as to material facts, or any inferences that may be drawn from them, that favor a well-pleaded theory of the plaintiff. *State ex rel. Fent v. State ex rel. Oklahoma Water Res. Bd.,* 2003 OK 29, ¶ 14, 66 P.3d 432, 439.

### DISCUSSION

I. Breach of Contract and Bad Faith

¶ 17 Milroy's insurance contract with Allstate provides, in pertinent part:

ASSISTANCE AND COOPERATION OF THE INSURED

An insured person must cooperate with us in the investigation, settlement and defense of any claim or lawsuit....

AUTOMOBILE LIABILITY INSURANCE BODILY INJURY LIABILITY

We will defend an insured person sued as a result of a covered accident involving an insured auto. We will choose the counsel. We may settle any claim or suit if we believe it is proper....

When defending an insured person, Allstate agreed to pay "up to $50 a day for the loss of wages or salary if we ask that person to attend hearings or trial," and "court costs for defense." Allstate also reserved the right "to appeal a judgment."

¶ 18 As the Oklahoma Supreme Court has held:

A breach of contract is a material failure of performance of a duty arising under or imposed by agreement. Although torts may be committed by parties to a contract, a tort is a violation of a duty imposed by law independent of contract. If the contract is merely the inducement which creates the occasion for the tort, the tort, not the contract, is the basis of the action. A common law duty to perform with care, skill, reasonable expediency, and faithfulness accompanies every contract. Negligent failure to observe any of these condi-

tions will give rise to an action ex delicto as well as an action ex contractu.

*Lewis v. Farmers Ins. Co., Inc.,* 1983 OK 100, ¶ 5, 681 P.2d 67, 69 (footnote omitted). In *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, the Court recognized that these two theories of recovery may be asserted premised on the existence of an insurance contract. In every insurance contract there is an implied in law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received. *Id.* at ¶ 25–26, 577 P.2d at 904–05. Violation of that duty by the insurer gives rise to an action in tort for which consequential and punitive damages may be sought. *Id.* at ¶ 25, 577 P.2d at 904.

 ¶ 19 To warrant submission of her claim for breach of the duty of good faith and fair dealing to a jury, Milroy was required to show: (1) she was covered under the liability insurance policy issued by Allstate and it was required to take reasonable actions in handling the Lewis claim; (2) Allstate's actions were unreasonable under the circumstances; (3) Allstate failed to deal fairly and in good faith with *her* in its handling and defense of the Lewis claim; and (4) she sustained damages directly or proximately caused by Allstate's breach or violation of the duty of good faith and fair dealing. *Badillo v. Mid–Century Ins. Co.,* 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093.

¶ 20 In *Badillo,* an insured whose policy limits were only $10,000, hit a pedestrian with his truck, causing her serious injuries. The pedestrian's claim involved probable liability and damages greatly exceeding the policy limits. *Id.* at ¶ 8, 121 P.3d at 1089. The policy gave the insurer authority to settle any claim for the liability coverage "as it deemed appropriate." *Id.* at ¶ 5, 121 P.3d at 1089. The insurer forced the injured third party to file a lawsuit by declining reasonable requests concerning the investigation and settlement of the liability claim, failed to inform its insured of the requests, and in the process actually exposed its insured to excess liability. When the injured party filed suit against the insured, the insurer provided him legal counsel at its expense. The injured party received a verdict for $1 million, which

was reduced to $600,000 in accordance with the jury's finding of 40% contributory negligence. The insurer tendered the policy limits, reducing the judgment against the insured by $10,000.

¶ 21 The insured pursued a claim against insurer for breach of the duty of good faith and fair dealing, which, on trial to a jury, resulted in a $2.2 million verdict in his favor for financial losses, embarrassment and mental pain and suffering.

¶ 22 *Badillo* presented the Oklahoma Supreme Court with the opportunity to examine *Christian* and later cases and to clarify the level of culpability necessary for liability to attach to an insurer for breach of the duty of good faith and fair dealing in relation to a third-party claim. *Id.* at ¶ 28, 121 P.3d at 1094. It is "more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award." *Id.* The Court in *Badillo* concluded that the trial court did not err in submitting the issue of breach of the implied covenant of good faith and fair dealing to the jury and affirmed the $2.2 million in damages awarded to the insured. *Id.* at ¶ 77, 121 P.3d at 1110.

 ¶ 23 The contractual duty to defend includes the right to control the course of the defense of the liability claim and to decide on litigation strategy. By the terms of the contract, the task of weighing the merits of settlement with the risk and costs of litigation is relinquished to the insurer. *See Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis.2d 56, 307 N.W.2d 256, 260 (1981). It is this right to control the litigation that exposes the insurer to a claim for bad faith in a case where a verdict against the insured exceeds policy limits. *See Badillo,* 2005 OK 48 at ¶ 34, 121 P.3d at 1095 (citing *Alt v. American Family Mut. Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706, 712 (1976)).

 ¶ 24 Allstate provided Milroy with a defense and did so without any reservation of rights. It paid the judgment Lewis recovered and her subsequent attorney fee award, which resulted from a defense strategy that included the decision to exercise the statutory right to request removal of the case from the small claims docket. Undisputedly, there

was no probability that litigation expenses would diminish Lewis's ability to receive full recovery for her injuries, or that Milroy would be exposed to a verdict in excess of policy limits.[6] Indeed, at the hearing on Allstate's motion for summary judgment, Milroy's counsel admitted that with her $100,000 policy she "was never in jeopardy, never in jeopardy" of having an excess judgment entered against her. In *Badillo*, the insured was left "hanging out for his *financial* life." *Badillo*, 2005 OK 48 at ¶ 6, 121 P.3d at 1111 (Taylor, J., Watt, C.J., and Colbert, J., concurring specially)(emphasis added).

¶ 25 Milroy's claim against Allstate is based in part on her accusation of litigation misconduct against Horton. She claims that he prepared an untruthful answer to one of Lewis's discovery requests, specifically Interrogatory No. 15, and that he misled both Lewis's counsel and the Trial Court in the personal injury action regarding why she was not present when the case was set for trial on February 14, 2001. We note that these accusations were explored during Milroy's testimony for Lewis and explained during her cross-examination by Horton at the attorney fee hearing to the satisfaction of the Trial Judge, which is apparent when one compares the amount of fees originally requested with the resulting award. To the extent Allstate's litigation strategy affected Lewis, that matter was resolved through the hearing and the subsequent order awarding her an attorney fee. As discussed in detail below, Milroy's obligation is to demonstrate how the litigation strategy caused her damage.

¶ 26 The record reveals that Allstate legitimately disputed the alleged value of Lewis's claim. At trial, the jury returned a verdict for approximately half of the amount sought by Lewis at the time she filed her action in Small Claims Court. Horton effectively represented Milroy within the bounds permitted by law. We conclude that the litigation conduct provides no basis for a bad faith action under *Badillo*.

¶ 27 In opposing Allstate's summary judgment motion, Milroy also emphasized her belief that Allstate had "dragged her through the legal system" and involved her in a legal battle in the Lewis · case that was "totally unnecessary." While it may be her opinion that Allstate's overall defense strategy was ill-conceived, she undisputedly received the benefit of the defense Allstate was contractually obligated to provide. She neither suffered nor was exposed to the risk of financial loss beyond the policy limits. She admitted that she had no out-of-pocket expenses. She appeared at the Tulsa County Courthouse no more than three times, appearances which involved no more than six or seven total hours of her time. There is nothing in the record to indicate that she ever requested Allstate to pay her for loss of wages as a result of these appearances.

¶ 28 Even when viewed in the light most favorable to her, the record before the Trial Court on summary judgment reveals no acts by Allstate that were the direct cause of any money damages or injury to Milroy. Allstate did not contract with Milroy to eliminate any emotional distress she might suffer should she be at fault in an automobile accident. Milroy's policy contains provisions that contemplate the filing of suit, trial, judgment against her, and appeal, each of which can affect a person's peace of mind.

■ ¶ 29 "All litigation, including third-party insurance litigation, results in some detriment to those involved." *A.W. Huss Co. v. Continental Cas. Co.*, 735 F.2d 246, 256 (7th Cir.1984). Where the third party's recovery will not exceed the policy's liability limits, the question of whether the insurer will compromise or settle the claim or the manner in which it conducts the aspects of the defense are "matter[s] of no concern to

---

**6.** *Compare Badillo*, 2005 OK 48 at ¶¶ 12–13, 121 P.3d at 1090 (noting that "additional expenses associated with filing suit and the [insured's deposition] would have potentially reduced the amount available to the permanently and seriously injured third party as recompense for her injuries," and there was sufficient evidence to support a finding that insurer's claims adjuster knew or should have known that if suit was filed by the third party and not settled, "a high probability existed a large excess verdict/judgment would be entered against [the] insured at any trial").

the insured." *Id.* at 250 (quoting *Hilker v. Western Auto. Ins. Co.,* 204 Wis. 1, 235 N.W. 413, 414 (1931)). Applying Wisconsin law, the federal appellate court in *Huss* affirmed summary judgment to the automobile insurer, holding that the insured's concern, anxiety and business loss, incurred while insurer refused lower settlement offers before finally settling with the injured party at the policy limits, did not give rise to a bad faith claim. The Court recognized that, although the insurer has a duty to keep its insured timely and adequately informed of the progress of settlement negotiations, no breach of that duty can be asserted when the insurer fully protects the insured from an excess judgment. When insurer provides this protection, it becomes unnecessary to decide whether the period of time it takes to settle or litigate the claim was reasonable or unreasonable under the circumstances. *Id.* at 251 (citing *Baker v. Northwestern Nat'l Cas. Co.,* 22 Wis.2d 77, 125 N.W.2d 370 (Wis.1963)). We find the Court's reasoning in *Huss* to be persuasive.[7]

■■■ ¶ 30 Milroy asserts that, as part of its effort to punish the plaintiffs and their attorneys who bring lower value soft tissue injury claims, Allstate put Lewis through a tremendous amount of harassment in defending against her claim. The evidentiary materials in the summary judgment record do not support this assertion of harassment. However, even if they did, Allstate's treatment of Lewis, an adversary, does not support Milroy's claim of bad faith. The duty of an insurance company to deal fairly and in good faith with its insured does not extend to an injured third party seeking automobile liability insurance proceeds, who has no contractual or statutory relationship with the tortfeasor's insurer and only incidentally benefits from the contract with the named insured. *Allstate Ins. Co. v. Amick,* 1984 OK 15, 680 P.2d 362 (holding that a third party could not maintain an action against the tortfeasor's automobile insurer for bad faith negotiations and for failure to settle claims fairly and in good faith); *see also McWhirter v. Fire Ins.*

*Exchange, Inc.,* 1994 OK 93, 878 P.2d 1056 (dismissing, for failure to state a claim upon which relief could be granted, plaintiffs' breach of contract and bad faith action against insurer of minor, who had set a fire that damaged their property).

## II. Abuse of Process

¶ 31 The summary judgment materials reveal that Milroy's abuse of process claim against Allstate is actually part of her claim for breach of the duty of good faith and fair dealing—Allstate acted in bad faith in abusing process during the handling of the claim against her. Milroy's attempt to assert an independent claim for abuse of process fails as a matter of law. *See Greenberg v. Wolfberg,* 1994 OK 147, 890 P.2d 895.

## CONCLUSION

■■■ ¶ 32 The evidentiary materials of record do not show that Milroy suffered any cognizable injury in either contract or tort. In the context of a third-party claim made against the insured, Oklahoma law requires exposure to financial loss due to the insurer's handling of the claim as an element of a prima facie case for breach of the duty of good faith and fair dealing. *Badillo,* 2005 OK 48 at ¶ 25, 121 P.3d at 1093. Milroy's claim for abuse of process fails as a matter of law.

¶ 33 Based on our review of the record, we find that the Trial Court did not err in granting summary judgment in favor of Allstate. Accordingly, we affirm the appealed judgment.

¶ 34 AFFIRMED.

WISEMAN, P.J., and GOODMAN, J., concur.

---

7. We note also that the Wisconsin cases discussed and relied on by the Court in *Huss* were also cited by the Oklahoma Supreme Court in support of its decision in *Badillo,* under the heading "Unreasonableness and Breach." *Badillo,* 2005 OK 48 at ¶¶ 34–35, 121 P.3d at 1095–96.