2011 OK 42

**Patricia Hawk WING and Bernard Hawk Wing, Appellants,**

v.

**Jay D. LORTON, M.D., and Eastern Oklahoma Orthopedic Center, Inc., Appellees.**

**No. 107,930.**

Supreme Court of Oklahoma.

May 17, 2011.

Rehearing Denied Oct. 10, 2011.

Benjamin J. Butts, Butts & Marrs, P.L.L.C., Oklahoma City, for Appellants.

Matthew B. Free, Best & Sharp, Tulsa, for Appellees.

COLBERT, V.C.J.

¶ 1 The issue in this matter is whether the claim for medical malpractice is timely. Proper application of the discovery rule discloses that reasonable minds could differ as to when the plaintiff knew or should have known of the injury or condition resulting from the defendants' alleged failure to diagnose and provide proper treatment. Therefore, it was error for the lower courts to hold the claim was time-barred as a matter of law and the matter must be remanded for a determination by the trier of fact.

¶ 2 On February 10, 2006, Patricia Hawk Wing's car collided head on with a vehicle that veered into her lane. She was removed from her car with the "jaws of life" complaining of pain in her left leg and foot. Mrs. Hawk Wing was transported to Fairfax Hospital and on to St. Francis Hospital in Tulsa where she was treated by Dr. Jay D. Lorton, M.D., an orthopedic surgeon. Dr. Lorton performed surgery on Mrs. Hawk Wing's left leg on February 11th and 13th, but failed to order x-rays of her left foot. Mrs. Hawk Wing was discharged from the hospital on February 17, 2006.

¶ 3 By the time Mrs. Hawk Wing saw Dr. Lorton for a follow-up office visit on March 2, 2006, she believed that the pain and swelling in her left foot was caused by the impact of the accident and that her left foot must have been broken. Dr. Lorton advised that an x-ray was not necessary and that the foot was swollen from the accident and should improve. He told her to try to walk on her left foot. Mrs. Hawk Wing continued to com-

plain of pain and swelling in her left foot during visits to Dr. Lorton between March 14 and April 13, 2006, when Dr. Lorton finally performed an x-ray at her insistence and discovered the fractures in her left foot. In April or May of 2006, Mrs. Hawk Wing requested that Dr. Lorton refer her to an orthopedic foot specialist because she believed she required surgery for her fractured toes. She claims that Dr. Lorton refused that request. Despite Mrs. Hawk Wing's diminished confidence in Dr. Lorton, she continued to receive treatment from him on several occasions until her last visit on August 10, 2006.

¶ 4 During this time, Dr. Lorton reassured Mrs. Hawk Wing repeatedly that she would not know the permanent condition of her foot for six to twelve months and that with the passage of time she might be able to walk without assistance, without severe pain, and without the need to use a wheelchair. He told her that her foot fractures were healing, the alignment in her foot was satisfactory, and that he detected no gross instability of her foot. He continued to advise her, during this time, to try to walk on her left foot.

¶ 5 On October 19, 2006, Mrs. Hawk Wing saw another physician for the first time. He told her that, contrary to Dr. Lorton's reassurances since April of 2006, she would not walk again, that he could not imagine a doctor having her walk on her foot, and that he would testify that she should not have been walking on her foot. Two subsequent treating physicians confirmed that she would not walk again.

¶ 6 This action was brought on August 8, 2008, by Mrs. Hawk Wing and her husband. The petition alleged that Dr. Lorton and Eastern Orthopedic Medical Center, Inc. (Defendants) treated Mrs. Hawk Wing for injuries caused by the February 10, 2006, automobile accident. It further alleged that "[d]uring the course of this treatment, defendants negligently failed to properly diagnose and treat fractures in plaintiff's left foot, proximately causing Patricia Hawk Wing to suffer physical and emotional pain and suffering, physical injury, physical impairment, disability, loss of function, lost income and medical expenses." In addition to seeking damages for these injuries, the petition asserted a claim for loss of consortium on behalf of Mr. Hawk Wing.

¶ 7 Defendants moved for summary judgment arguing that the claims were barred by the two-year medical malpractice statute of limitations which provides:

An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation.

Okla. Stat. tit. 76, § 18 (Supp.2002). Defendants urged that "[b]y April, 2006, and before, Mrs. Hawk Wing had sufficient information (left foot pain, diagnosis of left foot fractures on April 13, 2006) regarding her left foot to start the running of the statute of limitations." They further urged that Plaintiffs "failed to bring their cause of action within two (2) years from the date Mrs. Hawk Wing knew or should have known through the exercise of reasonable diligence, of the existence of her injury (fractured left toes)."

¶ 8 Plaintiffs responded to the motion for summary judgment stating:

Plaintiff's broken foot is not the *wrongful injury or condition* that she seeks compensation for. She does not hold Dr. Lorton responsible for her broken foot. It was broken in the car accident. Rather, she claims that the delay in the diagnosis of her broken foot caused her to have permanent, severe, disabling pain which prevents her from walking and requires the use of a wheelchair. Accordingly, the statute of limitations did not begin to run until Patricia Hawk Wing knew, or should have known, that the delay in diagnosis and treatment would cause her condition.

The trial court granted summary judgment holding that the action was time barred as a

matter of law and a divided Court of Civil Appeals affirmed.

## STANDARD OF REVIEW

¶ 9 The appellate standard of review of a summary judgment is de novo. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. The evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to any material fact. *See Sperling v. Marler*, 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Even when the facts are not controverted, if reasonable persons may draw different conclusions from the facts summary judgment must be denied. *Bird v. Coleman*, 1997 OK 44, ¶ 20, 939 P.2d 1123, 1127. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, ¶ 8, 929 P.2d 288, 292. When genuine issues of material fact exist, summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Okla. State Bank & Trust Co.*, 1993 OK 117, ¶ 7, 860 P.2d 230, 233. Because the trial court has the limited role of determining whether there are such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence. *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

¶ 10 "To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action." *Akin v. Mo. Pac. R.R. Co.*, 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044. The statute of limitations is an affirmative defense. Okla. Stat. tit. 12, § 2008(C)(18) (Supp.2009). Therefore, Defendants as movants were required to demonstrate that the record reveals no substantial controversy as to any material fact regarding the statute of limitations and that the uncontroverted facts are in their favor.

## ANALYSIS

¶ 11 "The underlying purpose of statutes of limitations is to prevent the unexpected effort at enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution for a long time." *Seitz v. Jones,* 1961 OK 283, ¶ 11, 370 P.2d 300, 302. They are "intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof." *Id.* "[A] reasonably prudent person is required to pursue his claim with diligence. Statutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts." *Daugherty v. Farmers Coop.*, 1984 OK 72, ¶ 12, 689 P.2d 947, 950–951.

¶ 12 "The statute of limitations begins to run when the cause of action accrues. A cause of action accrues when a litigant could first maintain an action to successful conclusion." *Ranier v. Stuart and Freida, P.C.*, 1994 OK CIV APP 155, ¶ 5, 887 P.2d 339, 340–341 (citations omitted). "This will occur as soon as each element of the claim has been satisfied." Okla. Uniform Jury Instructions (Civil) No. 1.20 cmt. In other words, the cause of action accrues when a medical provider's acts or omissions fall below the standard of care and have caused injury to the plaintiff. *Grayson v. State ex rel. Children's Hosp.*, 1992 OK CIV APP 116, ¶ 12, 838 P.2d 546, 549–550.

¶ 13 "In the majority of malpractice cases ... the injury occurs contemporaneously with the negligent act." *Reynolds v. Porter*, 1988 OK 88, ¶ 9, 760 P.2d 816, 820–821. In those cases the general rule of accrual applies. However, sometimes the injury is manifested after the wrongful act or omission responsible for the medical negli-

gence action. In that case, a two-year limitations period begins to run from "the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of...." Okla. Stat. tit. 76, § 18. This "discovery rule"[1] "encompass[es] the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations." *Daugherty*, 1984 OK 72, ¶ 12, 689 P.2d at 950–951.

¶ 14 This action requires two key determinations concerning application of the medical negligence statute of limitations and the discovery rule it incorporates. The first is "the injury or condition complained of" and the second is when Mrs. Hawk Wing acquired sufficient information by which she knew or should have known that Dr. Lorton's alleged misdiagnosis and negligent treatment of her broken foot was the cause of the injury for which she seeks damages.

¶ 15 The first determination is evident from the petition which Mrs. Hawk Wing and her husband filed to initiate this action. The "injury or condition" she "complains of" is "physical and emotional pain and suffering, physical injury, physical impairment, disabili-

---

1. The discovery rule is one exception to the general rule of accrual of a cause of action. Another is the "continuing treatment" rule by which "a claim for malpractice does not accrue so long as the plaintiff is under 'continuous treatment' for the ailment in the treatment of which the malpractice occurred, or for the injury resulting from the malpractice itself." *Perkins v. U.S.*, 76 F.R.D. 590, 592 (W.D.Okla.1976). As this Court has noted, "[t]he continuous treatment concept ... has not been demonstrated to be part of the body of Oklahoma law. Conversely, the limitation period in medical malpractice actions as determined by statutory authority negates the application of the continuous treatment doctrine in Oklahoma." *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.*, 1982 OK 72, ¶ 5, 650 P.2d 857, 860 (citing Okla. Stat. tit. 76, § 18 (Supp.1976)). It should be noted that the version of the statute of limitations for medical negligence in force at the time of *Edwards* contained the discovery rule found in the current version *and* a three-year limitation on claims without the benefit of a discovery rule. The three-year provision was declared to be an unconstitutional special law in *Reynolds v. Porter*, 1988 OK 88, ¶¶ 18–25, 760 P.2d 816, 824. It is not clear whether the dicta in *Edwards*, a legal malpractice action, referred to the two-year discovery rule in the medical negligence statute or the three-year provision that is no longer in force.

   A related concept is found in the "continuous tort" or "continuing wrong" rule.

   Under the continuing wrong doctrine, however, "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." 54 C.J.S. Limitation of Actions § 177 (1987). In other words, "the statute of limitations does not begin to run until the wrong is over and done with." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983). *Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1430–31 (10th Cir.1996). This Court has never expressly addressed the continuing tort rule in a medical negligence action, although it applied essentially that rule, rather than the discovery rule, to a claim of clergy malpractice arising from the continuing sexual molestation of an adult by a priest in *Lovelace v. Keohane*, 1992 OK 24, 831 P.2d 624. There, a plaintiff argued that her multiple personality disorder, which developed before the alleged clergy molestation, prevented her from remembering the incidents and discovering the true cause and aggravation of her mental disorder. *Id.*, ¶ 19, 831 P.2d at 628. The *Keohane* court refused to apply a common-law discovery rule based on the plaintiff's actual awareness of the acts of molestation. *Id.*, ¶¶ 28–29, 831 P.2d at 630. Instead, *Keohane* held that the claim accrued and the statute of limitations began to run "at the end of each alleged sexual encounter" between the priest and the parishioner who had sought his counsel. Thus, plaintiff's action was barred because it was not brought within two years of her last sexual encounter with the priest in 1970. *Id.*, ¶ 17, 831 P.2d at 628. It should be noted that no statutorily mandated discovery rule exists as to clergy malpractice or legal malpractice, whereas this Court is required by statute to apply the discovery rule that has been incorporated into the medical malpractice limitations provision of section 18.

   Although this Court has not expressly adopted or rejected the continuous treatment or the continuous tort rules in medical negligence, one federal court has cited *Edwards* for the proposition that "the Oklahoma Supreme Court has explicitly rejected the application of the 'continuous tort' and 'continuous treatment' doctrines in the medical malpractice context." *Holmes v. United States*, No. CIV–06–796–R, 2009 WL 2732535, at *6 (W.D.Okla. Aug.26, 2009). The federal court's reading of *Edwards* is much broader than what was actually determined.

   This Court notes that neither the continuous treatment nor the continuous tort rules were asserted in this action. Therefore, today's decision expresses no opinion as to the application of such rules to these facts and offers no opinion as to the viability of these concepts under Oklahoma law.

ty, loss of function, lost income and medical expenses." She does not seek recovery only for the failure to diagnose the condition of her foot, which was broken in the accident, she also seeks recovery for her inability to walk which she attributes to Dr. Lorton's treatment before and after he determined the foot was broken. Thus, the "injury or condition complained of" results from more than the delay in obtaining an x-ray of her foot. Her claim of medical negligence includes being deprived of the opportunity to properly heal due to Dr. Lorton's repeated instructions to walk on the foot, his repeated assurances that the pain and swelling were normal, and his assurances that her foot was improving and, with the passage of time, she might be able to walk without assistance. These assurances continued until August 10, 2006, the date of Mrs. Hawk Wing's last office visit to Dr. Lorton. That date was well within the range of the six to twelve months Dr. Lorton stated it would take to know the permanent condition of her foot.

¶ 16 The lower courts treated Mrs. Hawk Wing's medical negligence claim as if it arose solely from the failure to x-ray her foot until April 13, 2006, and used that date as the beginning of the limitation period as a matter of law. However, the x-ray revealed the "true condition of things" only as to the fact her foot had been broken in the accident. It did not reveal the extent of the alleged malpractice that was to come over the coming months and it did not reveal that the assurances and the instructions she received to continue walking on the foot were wrongful.

■ ¶ 17 Mrs. Hawk Wing's knowledge that Dr. Lorton had failed to x-ray her foot did not equate automatically to knowledge sufficient to require her to pursue a malpractice claim. A second determination must be made into when Mrs. Hawk Wing had sufficient knowledge concerning her injury or condition to trigger the statute of limitations. Thus, the precise issue is whether the two-year statute of limitations began to run from the time Mrs. Hawk Wing learned from another doctor that her treatment by Dr. Lorton was not medically appropriate on October 19, 2006, or whether she had sufficient knowledge earlier which, if pursued, would

have led her to discover the alleged wrongful deficiencies in his treatment.

■ ¶ 18 "The question of when [a plaintiff] possessed sufficient information to trigger the running of the statute of limitations is one of fact." *Gallagher v. Enid Regional Hosp.*, 1995 OK 137, ¶ 11, 910 P.2d 984, 986. The trier of fact might conclude from the evidence presented that Dr. Lorton's failure to timely x-ray her foot provided sufficient knowledge to require Mrs. Hawk Wing to immediately seek other medical advice. However, equally reasonable minds might conclude that due diligence did not require that she immediately abandon the long-trusted relationship with her doctor and begin to explore a legal remedy. "[W]hether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, was a question to be determined in the trial court, on the basis of the facts and circumstances of the particular case." *Flowers v. Stanley*, 1957 OK 237, ¶ 15, 316 P.2d 840, 847 (citing *McNeal v. Steinberger*, 1943 OK 99, ¶ 4, 192 Okla. 283, 135 P.2d 490, 491). Therefore, the trial court erred in granting summary judgment and this matter must be remanded for a determination of fact.

¶ 19 A line of cases beginning with *Redwine v. Baptist Medical Center*, 1983 OK 55, 679 P.2d 1293, supports this holding. In *Redwine*, a plaintiff filed a wrongful death action against a surgeon and hospital more than two years after her husband's death. She did not discover the wrongfulness of her husband's death at the time of the surgery because the surgeon told her that her husband's death was simply "one of those things." *Id.*, ¶ 2, 679 P.2d at 1294. She did not discover the true cause until the medical examiner informed her that the true cause was a malfunction in the surgical equipment. *Redwine* observed that the element of "wrongfulness" is "an integral and inseparable part" of any medical negligence action.[2] *Id.*, ¶ 12, 679 P.2d at 1296. This Court held that the limitations period was not to be determined as a matter of law from either the time of her husband's death or from the time she was informed the death was wrong-

**2.** In applying the medical negligence discovery

rule contained in section 18 of title 76, *Redwine*

ful. Instead, this Court held that "[w]hether plaintiff exercised 'reasonable diligence' in ascertaining the cause of her husband's death is a question of fact to be determined by the jury."[3]  *Id.*, ¶ 8, 679 P.2d at 1295. Thus, *Redwine* demonstrates that the proper analysis of the statute of limitations in medical negligence asks whether a plaintiff has exercised reasonable diligence in determining the wrongfulness and cause of the "death, injury or condition complained of" under section 18 of title 76.

¶ 20 The most recent of the *Redwine* progeny is on point. In *Lancaster v. Hale*, 2007 OK CIV APP 9, 152 P.3d 890, the plaintiff awoke from hip replacement surgery on February 16, 2001. He was in extreme pain and immediately realized that his right hip was one-half inch shorter than the left. He continued to experience great pain in the ensuing months but the defendant surgeon continued to "advise him that his pain was normal, that he was improving, and that any excessive pain was probably caused by his own improper conduct or driving his truck." *Id.*, ¶ 2, 152 P.3d at 891. These assurances continued until plaintiff's treatment by the defendant ended on October 29, 2002. On December 26, 2002, he learned from another doctor that his earlier care was wrongful. *Id.*, ¶ 3, 152 P.3d at 891. The plaintiff filed his action for medical negligence on December 14, 2004, and the trial court granted summary judgment to the surgeon finding specifically "that Plaintiff knew or should have known of his cause of action more than two years before filing suit." *Id.*, ¶ 4, 152 P.3d at 891. The Court of Civil Appeals reversed finding "that a substantial controversy exist[ed] as to whether [Plaintiff] knew, or was able to discover with diligence, the existence of a cause of action against Defendant for the February 16, 2001, surgery until December 26, 2002." *Id.*, ¶ 12, 152 P.3d at 893. The facts in *Lancaster* are nearly identical to those in this matter and the same result must obtain.

## CONCLUSION

¶ 21 The facts of this case present a jury question as to whether Mrs. Hawk Wing exercised reasonable diligence in discovering the cause of the pain and disability which accompanied her treatment by Dr. Lorton. This matter must be remanded for the trial court's submission of that question to the trier of fact.

## CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.

CONCUR: COLBERT, V.C.J.; KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ.

DISSENTS: TAYLOR, C.J.

---

observed:

> Section 18 does not purport to create a new cause of action. It operates as a limitation upon existing rights of action. There is not, nor can there be a cause of action for death, injury, or condition unless the death, injury or condition is wrongful. Thus, the element of wrongfulness by necessary implication is an integral and inseparable part of the "action" referred to. Likewise, it is the wrongful "death, injury or condition complained of," the existence of which the plaintiff "knew, or should have known, through the exercise of reasonable diligence" which triggers the running of the limitations in § 18. Therefore, the statute begins to run from the date when the plaintiff knew, or should have known, through the exercise of reasonable diligence of the wrongful death, injury or condition complained of.

*Redwine v. Baptist Med. Ctr.*, 1983 OK 55, ¶ 12, 679 P.2d 1293, 1296.

3. *Redwine* noted:

> [W]e need not address the question of whether [the surgeon's] statement to plaintiff that her husband's death was simply "one of those things" constitutes a fraudulent representation which tolls the statute of limitations. Whether or not the statement constituted fraudulent concealment, it was at least a circumstance which tends to explain her failure to make an earlier determination of the cause of death, and its weight is for the jury to determine. *Redwine*, 1983 OK 55, ¶ 9, 679 P.2d at 1295. In this matter, Mrs. Hawk Wing does not assert fraudulent concealment. However, as in *Redwine*, the surgeon's assurances are at least a circumstance for the trier of fact to weigh in determining whether she acted with reasonable diligence.