2015 OK 82

**Sandra Vilarrubias SERRA,
Plaintiff/Appellant,**

v.

**Personal Representative of the ESTATE OF Donald BROUGHTON,
Deceased,**

and

**Andrea McNair, Defendants,**

and

**State Farm Mutual Automobile Insurance Company,
Defendant/Appellee.**

No. 112,622.

Supreme Court of Oklahoma.

Dec. 8, 2015.

John M. Crockett, Pryor, Oklahoma, and Dale R. Marlar, Claremore, Oklahoma, for Appellant.

Joseph T. Acquaviva, Frances J. Armstrong, Oklahoma City, Oklahoma, for Appellee.

## OPINION

WATT, J.:

¶1 The issue in this case is whether the plaintiff, Appellant Sandra Vilarrubias Serra, is covered under the uninsured/underinsured motorist (UM) and medical payments (medical pay) coverage of the automobile insurance policy issued to Traci Robertson by the Appellee, State Farm Mutual Automobile Insurance Company (State Farm). In particular, we must decide whether Serra is a "ward" of Robertson for purposes of coverage under the policy. We hold that she is covered and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Serra was a foreign exchange student from Spain who was attending her senior year of high school in Pryor, Oklahoma. She resided in the home of Traci Robertson in Pryor. As a passenger in the car of a friend, Andrea McNair, she sustained serious injuries when McNair's car collided with Donald Broughton, who was driving a motorcycle. Broughton was killed in the accident. Serra attempted to collect damages for her injuries by filing a claim against Robertson's automobile policy's uninsured motorist and medical payments coverage. State Farm denied coverage to Serra who then filed a lawsuit against the Personal Representative of Donald Broughton, Andrea McNair and State Farm.[1] State Farm filed a motion for summary judgment in the trial court which was granted. Serra appealed to this Court, and the appeal was assigned to the Court of Civil Appeals (COCA), Division IV. In a published opinion, COCA affirmed the trial court. We granted certiorari.

## POLICY PROVISIONS

¶3 Under the "Medical Payments Coverage" of the policy, "Insured" is defined as follows:

*Insured* means:

1. *you* and *resident relatives:*
    a. while *occupying:*
        (1) *your car;*
        (2) a *newly acquired car;*
        (3) a *temporary substitute car;*
        (4) a *non-owned car;* or
        (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or
    b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and
2. any other *person* while *occupying:*
    a. *your car;*
    b. a *newly acquired car;*
    c. a *temporary substitute car,* or
    d. a *trailer* while attached to a *car* described in a., b., or c. above.

    Such vehicle must be used within the scope of *your* consent.

(emphasis in original)

¶4 Under the "Uninsured Motor Vehicle Coverage" of the policy, "Insured" is defined as follows:

*Insured* means:

1. *you;*
2. *resident relatives;*
3. any other *person* while *occupying:*
    a. *your car;*

b. a *newly acquired car;* or

c. a *temporary substitute car.*

Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured;* and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in items 1., 2., or 3. above.

(emphasis in original)

¶ 5 Under both types of coverage noted above, the term "resident relative" is included in the definition of "insured." Under the general "Definitions" section of the policy, "resident relative" is defined as follows:

*Resident Relative* means a *person,* other than *you,* who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

. . .

2. A ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above [relating to relatives of the insured by blood, marriage, or adoption]. (emphasis in original)

"Person" is defined:

*Person* means a human being.

¶ 6 Thus, the policy coverage extends to Robertson herself as the insured, "resident relatives" of Robertson, a passenger in Robertson's car, or any "person" entitled to compensation for bodily injury as an "insured" as defined by the policy. The only potential for UM or medical pay coverage for Serra appears to be as a "resident relative" of Robertson, as she was not injured in Robertson's car. State Farm denies that Serra was a "resident relative" at the time of the accident because: (1) she did not primarily reside with Robertson; (2) she is not related to Robertson by blood, marriage or adoption; and (3) she is not Robertson's "ward" or "foster child." Serra did reside in Robertson's home at the time of the accident. However, she clearly is not a "foster child" of Robertson. The question then is whether

she could be considered a "ward" of Traci Robertson, the named insured. In considering this question, COCA held Serra was not Robertson's ward and upheld the summary judgment entered in favor of State Farm.

## LEGAL DISCUSSION

¶ 7 In ruling that Serra was not covered as a "ward" under the policy, COCA relied on *Houston v. National General Insurance Co.,* 817 F.2d 83 (10th Cir.1987). The United States Court of Appeals for the Tenth Circuit considered whether a claimant could be a "family member" of the insured which included a "ward" or "foster child". The plaintiff argued she was a "ward" of the insured because she was a resident of his household, although she was not related by "blood, marriage or adoption". Her relationship to the insured was as the mother of the insured's grandchild who also happened to live with the insured and his wife. The term "ward" was not defined in the policy. The trial court construed it strictly and denied coverage based on the statutory definition of "ward" found at 30 O.S.1981 § 2.[2] The statutory definition is: "A person over whom a guardian is appointed and a person over whose property a guardian or conservator is appointed is called a ward." On appeal, the plaintiff argued the term "ward" should be strictly construed against the insurer and words defining coverage should be given their ordinary meaning, rather than a technical, legal construction. She argued the terms were ambiguous and should be construed most favorably for her. The appellate court agreed and reversed the trial court. The Tenth Circuit court held that because the policy did not define "ward" or limit the coverage to instances in which "ward" status was conferred by legal appointment, the term was ambiguous and should not be limited to a technical, legal definition. *Houston,* supra, at 85.

¶ 8 Despite the similarities between the policy provision in the instant case and in *Houston,* supra, COCA held the term "ward"

2. Renumbered as 30 O.S. § 1–107, effective 12/1/88, of the Oklahoma Guardianship and Conservatorship Act.

did not apply to Serra. Referring to *Houston*, supra, and *Flitton v. Equity Fire and Casualty Company*, 1992 OK 2, 824 P.2d 1132, the appellate court reasoned:

Accordingly, because the term "ward" is undefined in the Policy, we also adopt a non-technical definition similar to the one adopted in *Houston* and consistent with the Supreme Court's guidance in *Flitton*. However, we decline to adopt, out of context, the non-technical definition of "ward" set forth in *Houston*—i.e., of any person "under the protection or tutelage" of another—because this definition, by itself, is far too broad and vague, nor does it appear from a review of its entire opinion that the *Houston* Court intended to adopt such an imprecise definition. In fact, as stated above, the *Houston* Court refined the definition of "ward" to include only those who can "fairly be considered as having been under the care and protection of the insured," and who are both "within the domestic circle of, and are economically dependent on," the insured.

COCA opinion, ¶ 18.

■ ¶ 9 While COCA found the refined definition of "ward" in *Houston*, i.e., "under the care and protection of the insured" and "within the domestic circle of, and are economically dependent on", was not applicable to Serra, we disagree. It is not disputed that Serra's parents have the ultimate responsibility for her support, education, and her physical care and well-being. We also understand that she is, and was, at the time of the accident, eighteen years old. She did not live independently, but was assigned to a host family where she could be integrated into the home life of the Robertson family, and on a larger scale, the culture of the United States. Within the context of a foreign exchange program, Robertson was designated as the person **in this country** to whom Serra and her parents looked to provide "care and protection" while she attended Pryor High School. We do not mean to imply that Serra severed her dependent relationship with her parents in any way. However, for a period of time, Serra became a member of Robertson's household, and by doing so, received indirect economic benefits from Robertson, as well as the intended educational and cultural benefits for which the Mutual Educational and Cultural Exchange Program was enacted.[3]

■ ¶ 10 The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law.[4] An undefined policy term should be given its plain and ordinary meaning.[5] The term "ward" is not defined in the policy. Moreover, it is found in close proximity to the term "foster child." The reference to "ward" is therefore ambiguous, and we will not apply a legal, technical definition to it. See *Houston*, supra, at 85.[6] When an insurance provision is ambiguous, words of inclusion will be construed liberally in the insured's favor, and words of exclusion will be construed strictly against the insurer. *Haworth v. Jantzen*,

3. The "Congressional statement of purpose" of the Mutual Educational and Cultural Exchange Program, at 22 U.S.C. § 2451, provides:

The purpose of this chapter is to enable the Government of the United States to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange, to strengthen the ties which unite us with other nations by demonstrating the educational and cultural interests, developments, and achievements of the people of the united States and other nations, and the contributions being made toward a peaceful and more fruitful life for people throughout the world, to promote international cooperation for educational and cultural advancement; and thus to assist in the development of friendly, sympathetic, and peaceful relations between the United States and the other countries of the world.

4. *Max True Plastering Co. v. United States Fidelity and Guaranty Co.*, 1996 OK 28, 912 P.2d 861, 869.

5. *Clayton v. Millers First Insurance Companies*, 384 Ill.App.3d 429, 322 Ill.Dec. 976, 892 N.E.2d 613 (Ill.App.2008).

6. "Generally [the] terms of an insurance policy must be considered not in a technical but in a popular sense, and they should be construed according to their plain, ordinary and accepted use in common speech, unless it affirmatively appears that a different meaning was intended." See *Houston*, supra, at 85, quoting *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.*, 555 F.2d 778, 782 (10th Cir.1977).

2006 OK 35, ¶ 17, 172 P.3d 193, 197. When an insurer desires to limit its liability under a policy, it must use language which clearly and, distinctively reveals its stated purpose. *Id.* It should be construed in non-technical, common terms. See *Haworth,* supra; *Houston,* supra. Because of the ambiguity, it should be given the definition which favors coverage. *Haworth v. Jantzen,* 2006 OK 35, ¶ 1, 172 P.3d at 194. Neither the term "ward" nor "foster child" suggests that a familial relationship with the insured is required for coverage as a "resident relative" under the UM or medical payments coverage. A relationship to Robertson, the named insured, by blood, marriage, or adoption is, thus, not required.

¶ 11 As a reason for denial of coverage, State Farm argued that under the Exchange Act, Serra's parents were required to have health and accident insurance coverage for their daughter while she was in this country as an exchange student. We acknowledge that this was required under the Act. However, insurance coverage held by Serra's parents on her behalf does not necessarily preclude coverage for UM and medical pay benefits under Robertson's insurance policy if Serra meets the definition of "insured." We hold that she does.

¶ 12 COCA stated a difference between the instant case and *Houston* and *Clayton,* both of which remanded to the trial court because material facts existed as to whether the plaintiff was a "ward" of the insured, was that "[S]erra, who lived with Robertson for only a few weeks prior to the accident and then returned to her home in Spain, did not have the dependence on Robertson that the plaintiffs had on the insureds in *Houston* and *Clayton.*"[7] This determination was based on COCA's determination that Serra lived with Robertson for only a few weeks, that Serra's parents provided her with spending money, insurance and material goods, and that she became eighteen prior to traveling to Oklahoma to spend a limited amount of time, i.e., the school year, with Robertson.

¶ 13 COCA declined to adopt the non-technical definition of "ward" first set forth by the *Houston* court ["under the protection or tutelage" of another], because it was too broad and vague, nor the "refined" definition [those who can "fairly be considered as having been under the care and protection of the insured" and who are both "within the domestic circle of, and are economically dependent on" the insured]. We need not decide what a precise definition of "ward" should be. However, based on our case law, we cannot say, as a matter of law, that the term "ward" could not apply to Serra for purposes of coverage in this case.

¶ 14 In *Flitton v. Equity Fire & Casualty Company,* 1992 OK 2, 824 P.2d 1132, we determined that the policy term "family member" [defined in the policy therein as related by blood, marriage or adoption who is a resident of the insured's household] which included a "ward or foster child", should include a stepbrother of the insured, despite the argument that stepbrothers are not technically related by marriage to each other.[8] We held the average policyholder would understand two stepbrothers are related by the marriage of their parents. Citing *Houston,* supra, and *Brokenbaugh v. New Jersey Mfrs. Ins. Co.,* 158 N.J.Super. 424, 386 A.2d 433, 436 (1978), this Court declined to rewrite the policy to require a "family member" related by "blood, marriage or adoption" to include the technical requirement of "affinity" which is distinguished from "consanguinity", denoting a relationship by blood.[9] This would

---

7. ¶ 21, COCA opinion.

8. We noted in *Flitton,* supra, at page 1133, that generally courts have held "affinity" includes the relationship of stepchild and stepparent, but not that of other steprelations, citing *State Farm Mutual Auto. Ins. Co. v. Byrne,* 156 Ill.App.3d 1098, 109 Ill.Dec. 510, 512, 510 N.E.2d 131, 133 (2 Dist.1987).

9. At page 1133 of *Flitton,* supra, we quoted the definition of "affinity" approvingly from *In re*

*Bordeaux' Estate,* 37 Wash.2d 561, 225 P.2d 433, 436 (1950):

[T]he term "affinity" is not susceptible of precise definition. Broadly speaking, however, it may be regarded as the connection existing in consequence of marriage between each of the married persons and the kindred of the other. It is distinguished from consanguinity, which denotes relationship by blood. *Id.* 225 P.2d at 436.

have been a technical definition of "family member", which we rejected because it was not required by the policy terms.

¶ 15 There, as here, no technical definition of "ward" is specified by the State Farm policy. Despite the short time Serra lived with Robertson, she was under Robertson's care and protection while she lived under her roof. She understood she was to follow the Robertson family's rules and looked to Robertson for guidance and supervision. She did not consider herself to be under her own care and protection as an adult at the time of the accident, despite the fact State Farm offered this as an undisputed fact.[10]

## SUMMARY JUDGMENT AND STANDARD OF REVIEW

¶ 16 The appellate standard of review in a motion for summary judgment is *de novo*. *Wing v. Lorton,* 2011 OK 42, 261 P.3d 1122. The evidentiary materials will be examined to determine if there is a substantial controversy as to the material facts. *Id.,* citing *Sperling v. Marler,* 1998 OK 81, 963 P.2d 577. All inferences and conclusions to be drawn must be viewed in the light most favorable to the nonmoving party. *Wing v. Lorton* supra, citing *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

¶ 17 Because we hold the terms of the insurance policy were ambiguous as to the definition of "ward", we cannot determine, as a matter of law, that summary judgment was properly entered in favor of State Farm by the trial court. Accordingly, we reverse COCA's opinion which found that Serra could not qualify as a "ward" under the facts of this case. This case must be remanded to the trial court for further proceedings.

¶ 18 The opinion of the Court of Civil Appeals is vacated. The order of the trial court is reversed. This case is remanded to the trial court for further proceedings in accord with this opinion.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S**

10. Serra "denied" this in her responses to State Farm's requests for admissions. See Record on Accelerated Appeal, tab number 4, Serra's responses to State Farm's Request for Admissions,

**JUDGMENT REVERSED AND RE-MANDED.**

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, GURICH, JJ.—CONCUR.

WINCHESTER, TAYLOR, JJ.—DISSENT.

No. 13, attached to Plaintiffs Response to State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment.