**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**February 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

GALAN D. COBB, an individual,

    Plaintiff - Appellant/Cross-
    Appellee,

v.

TINKER FEDERAL CREDIT UNION, a
Federally Chartered Credit Union Service
Organization,

    Defendant - Appellee,

and

MULINIX OGDEN HALL ANDREWS
AND LUDLAM P.L.L.C., an Oklahoma
professional limited liability company;
HALL AND LUDLAM P.L.L.C., an
Oklahoma professional limited liability
company; JEFFREY S. LUDLAM,
individually; JOEL C. HALL, individually;
RANDY G. GORDON, individually,

    Defendants - Appellees/Cross-
    Appellants.

Nos. 21-6020; 21-6024
(D.C. No. 5:20-CV-00847-J)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **PHILLIPS**, Circuit Judges.
_____

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This case presents two issues on appeal. First, Galan D. Cobb challenges on statute-of-limitations grounds the dismissal of his complaint under Federal Rule of Civil Procedure 12(b)(6). Second, Tinker Federal Credit Union ("Tinker") and the other defendants, Mulinix, Ogden, Hall, Andrews, and Ludlam, PLLC; Hall & Ludlam, PLLC; Jeffrey S. Ludlam; Joel C. Hall; and Randy G. Gordan (collectively, "Attorney Defendants") cross-appeal the district court's denial of their motions for attorneys' fees. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.    State-Court Litigation[1]

In July 2006, Tinker sued Cobb in Oklahoma state court after he fell behind on his automobile-loan payments. Because Cobb failed to appear, the court entered default judgment for Tinker. In September 2006, the state court entered the following docket entry: "RICKS: JUDGMENT FOR PLAINTIFF AS PER JOURNAL ENTRY." R. vol. 1 at 67. But this entry was apparently made in error because no final journal entry of default judgment ("JE") was ever filed in the state-court records.[2] Nor could the court clerk of Oklahoma County locate one.[3]

---

[1] "[F]or purposes of resolving a Rule 12(b)(6) motion, this court accepts as true all well-pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

[2] As we understand Cobb's allegations, the absence of a JE means that no final judgment was filed.

[3] Tinker argues that it timely filed a JE with the state court in 2006. But it concedes that it cannot locate the JE.

Despite this fact, Attorney Defendants began collection actions on behalf of Tinker. These actions included garnishing Cobb's wages, renewing the judgment, and holding hearings aimed at revealing Cobb's assets.

On October 11, 2016, another asset hearing was set. But before the hearing, Cobb's attorney discovered that no JE was on file and notified the judge—more than ten years after the mistaken docket entry was made. That same day, Tinker applied for nunc pro tunc relief to retroactively enter a JE in this case.[4]

About six months later, the state court granted Tinker's application and directed that a JE be entered in the case. In that order, it stayed collection activities during all appeals or until the time to appeal had lapsed. Tinker and Attorney Defendants had ceased attempting to collect against Cobb since the last asset hearing on October 11, 2016.

Cobb appealed the order to the Oklahoma Court of Civil Appeals ("OCCA"). In January 2019, the OCCA reversed and remanded the case. Tinker then petitioned for certiorari to the Oklahoma Supreme Court. In September 2019, the Oklahoma Supreme Court denied certiorari. And on October 17, 2019, the mandate from the Oklahoma Supreme Court was filed on the state district court's docket.[5]

---

[4] In Oklahoma, a nunc pro tunc order is used to correct an "inadvertent clerical omission" and other "facial mistakes in recording judicial acts that actually took place." *Stork v. Stork*, 898 P.2d 732, 736–37 (Okla. 1995) (emphasis removed).

[5] According to Cobb, there is some discrepancy about whether the mandate was issued on October 16 or October 17. The one-day difference doesn't affect our analysis. So we assume, as Cobb did, that the mandate was issued on October 17.

In November 2019, with the case back in the state district court, Tinker filed a motion to settle journal entry.[6] In January 2020, Tinker's motion was granted.

## II.    Federal-Court Litigation

In August 2020, Cobb sued Tinker and Attorney Defendants in federal court, alleging five claims: (1) abuse of process; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) violation of Oklahoma's Consumer Protection Act; (4) negligence; and (5) violation of Cobb's due process rights under the Fifth and Fourteenth Amendments.[7] After Tinker and Attorney Defendants moved to dismiss, Cobb voluntarily dismissed his third, fourth, and fifth claims. So only his abuse-of-process and FDCPA claims remained.

The district court granted Tinker's and Attorney Defendants' motions to dismiss. It held that the statute of limitations precluded both of Cobb's claims.

After the district court dismissed the complaint, Tinker and Attorney Defendants moved for attorneys' fees. The district court denied their motions.

---

[6] The motion to settle journal entry was another attempt to resolve the missing-JE issue. Cobb has appealed the January 2020 order granting Tinker's motion in Oklahoma state court. That appeal is pending.

[7] Cobb's complaint also asserted a sixth claim for relief for punitive damages. But as the district court noted, in Oklahoma, a request for punitive damages is not a separate claim. *Allred v. Rabon*, 572 P.2d 979, 981 (Okla. 1977).

## DISCUSSION

We first address whether Cobb's abuse-of-process and FDCPA claims were barred by the statute of limitations. We then consider Tinker's and Attorney Defendants' cross-appeal for attorneys' fees.

## I.      Statute of Limitations

We review de novo a district court's dismissal under Rule 12(b)(6). *Race v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).

### A.      Abuse-of-Process Claim

Because this is a diversity action, we apply Oklahoma law to Cobb's abuse-of-process claim. *See Hjelle v. Mid-State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir. 2005). In Oklahoma, a claim for abuse of process has a two-year limitations period. *Greenberg v. Wolfberg*, 890 P.2d 895, 905–06 (Okla. 1994). This statute of limitations is triggered by the "accrual of the cause of action," not necessarily the "commencement or the termination of a proceeding." *Id.* (emphasis removed). And an "abuse-of-process claim accrues when the process is abused and damages are incurred[.]" *Id.* (emphasis removed).

Cobb alleged that:

> Defendants . . . abused the District Court and legal process by garnishing Plaintiff Cobb's wages 44 times over a period of ten years, by renewing a non-existent Journal Entry of Judgment twice, and by applying for three orders to appear and answer for assets, all without a Journal Entry of Judgment filed of record.

R. vol. 1 at 20. Based on those allegations, the district court concluded that the latest date the abuse-of-process claim could have begun accruing was October 11, 2016—

the last day Tinker and Attorney Defendants sought to collect against Cobb. And because Cobb didn't sue until August 2020, the court ruled that his claim was barred by the statute of limitations.

In contrast, Cobb contends that his abuse-of-process claim didn't begin accruing until October 17, 2019—when the mandate from the Oklahoma Supreme Court remanding the case was placed on the trial court's docket. According to Cobb, the state district court's order granting the nunc pro tunc order remained in effect until then. So, he argues, he couldn't have successfully maintained his abuse-of-process claim until the Oklahoma Supreme Court, in its mandate, reversed the nunc pro tunc order.

We disagree. First, Cobb cites no authority to support his argument but merely recites the elements of an abuse-of-process claim. Second, as explained above, a claim for abuse of process in Oklahoma accrues "when the process is abused and damages are incurred." *Greenberg*, 890 P.2d at 905. In this regard, Cobb alleges that Tinker and Attorney Defendants abused the legal process when they tried to collect on a nonexistent JE. They last attempted to do so in October 2016. So that's when Cobb's abuse-of-process claim accrued. And because he sued more than two years later, the statute of limitations had run, meaning the district court properly dismissed the abuse-of-process claim.

### B.    FDCPA Claim

Cobb's FDCPA claim is also barred by the statute of limitations. An FDCPA claim has a one-year statute of limitations that runs "from the date on which the

violation occurs." 15 U.S.C. § 1692k(d). Cobb alleged that Tinker and Attorney Defendants violated the FDCPA by engaging in collection activities without a JE. Again, the last collection attempt occurred, at the latest, in October 2016. And Cobb did not sue until August 2020—well after the FDCPA's one-year statute of limitations had lapsed.

Thus, the district court also correctly dismissed the FDCPA claim as time barred.

### C.    Cobb's Counterarguments

Cobb asserts two theories for why his claims are not barred by the statute of limitations: (1) the continuing-wrongs doctrine; and (2) equitable tolling. We address each in turn.

### a.    Continuing-Wrongs Doctrine

Under the continuing-wrongs doctrine, when a tort "involves a continuing or repeated injury . . . , [the] limitations begin to run from, the date of the last injury." *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (quoting 54 C.J.S. Limitation of Actions § 177 (1987)); *see also Wing v. Lorton*, 261 P.3d 1122, 1126 n.1 (Okla. 2011) (same). Said another way, "the statute of limitations does not begin to run until the wrong is over and done with." *Tiberi*, 89 F.3d at 1430–31 (citation omitted). According to Cobb, Tinker's and Attorney Defendants' wrongful actions included not only their wrongful attempts to collect without a JE, but also their motions and appeals in "pursuit of obtaining a JE to continue their collection actions." Cobb Opening Br. at 13. So he argues that his abuse-of-process and FDCPA

claims did not accrue until Tinker's and Attorney Defendants' appeals had ceased on October 17, 2019, the date the Oklahoma Supreme Court's mandate issued.

But Tinker's and Attorney Defendants' motions and appeals to settle the missing-JE issue are not continuing wrongs. We have held that subsequent appeals are generally not continuing violations. *See Turner v. Middle Rio Grande Conservancy Dist.*, 757 F. App'x 715, 720 (10th Cir. 2018) ("The subsequent stay of enforcement and appellate review . . . is not a continuing violation of [the plaintiff]'s constitutional rights."); *see also Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (explaining that the continuing-wrongs doctrine applies to "continual unlawful acts, not by continual ill effects from the original violation" (citation omitted)).

The only case Cobb cites to support his continuing-wrongs theory is a decades-old, out-of-circuit opinion, which stated that sometimes a continuing wrong "may be perpetuated by otherwise legal actions, such as appealing the court decision in this case." *Gordan v. City of Warren*, 579 F.2d 386, 391 (6th Cir. 1978). In *Gordan*, the Sixth Circuit emphasized that the "continuing wrong" was the constitutional violation of taking the plaintiffs' property without just compensation. *Id.* It then explained that the defendants' subsequent appeals "perpetuated" that wrong by making "it impossible for the plaintiffs to enjoy the use of their property[.]" *Id.* Unlike *Gordan*, Tinker's and Attorneys' Defendants' motions and appeals did not "perpetuate" Cobb's alleged wrong of collecting against him without a JE. As discussed, Tinker's and Attorney Defendants' violations were "over and done with" in October 2016—when they last tried to collect without a JE. *Tiberi*, 89 F.3d at 1431.

8

In sum, the district court did not err by declining to apply the continuing-wrongs doctrine to Cobb's abuse-of-process and FDCPA claims.

b.    Equitable Tolling

Next, Cobb argues that the district court erred by not equitably tolling the statute of limitations for his claims. When a district court declines to apply equitable tolling, we review for abuse of discretion. *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).

"In the appropriate case, exceptional circumstances may justify tolling a statute of limitations." *Id.* at 1219. Cobb insists that this case's state-court litigation, including the appeals, constituted exceptional circumstances. Yet, as the district court pointed out, Cobb cites no authority to support his argument; he simply asserts that equitable tolling is justified given the case's "unique procedural history." Cobb Opening Br. at 18. We conclude that the district court did not abuse its discretion in refusing to equitably toll the limitations period for Cobb's claims.

## II.    Attorneys' Fees

Next, we turn to Tinker's and Attorney Defendants' cross-appeal for attorneys' fees under a litany of state and federal statutes. The district court declined to award fees under any of them. "We review the district court's decision not to award attorneys' fees for an abuse of discretion." *Cowley v. W. Valley City*, 782 F. App'x 712, 716 (10th Cir. 2019).

A.    State Statutes

Tinker and Attorney Defendants first argued that they were entitled to attorneys' fees under three Oklahoma statutes: (1) Okla. Stat. tit. 12, § 2011.1; (2) Okla. Stat. tit. 23, § 103; and (3) Okla. Stat. tit. 15, § 761.1.

These statutes require a court to award attorneys' fees to a prevailing party if it determines that a claim or defense was frivolous, brought in bad faith, not well-grounded in fact, or unwarranted under existing law with no good-faith argument to change the law.[8] Here, the district court found that none of these grounds were met.

But Tinker and Attorney Defendants offer two arguments in rebuttal. First, they insist that the district court abdicated its responsibility by failing to make the necessary findings as required by the statutes. We disagree. The district court made the required findings: "the Court finds this claim is not 'frivolous.' It was not asserted in bad faith; it was well grounded in fact, and plaintiff made a rational, good faith argument to support his position that the claim was not barred by the statute of limitations." Supp. R. at 131.

---

[8] Under § 2011.1, a court must award attorneys' fees if it determines that "a claim or defense asserted in the action by a nonprevailing party was frivolous." Section 2011.1 defines "frivolous" as a "claim or defense [that] was knowingly asserted in bad faith or without any rational argument based in law or facts to support the position of the litigant or to change existing law." Similarly, § 103 and § 761.1 mandate an award of attorneys' fees to the prevailing party if a court finds that a nonprevailing party's claim or defense was brought "in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

Next, Tinker and Attorney Defendants argue that Cobb conceded that three of his claims were frivolous by voluntarily dismissing them after the filing of the motions to dismiss. But a party's dismissing claims is not necessarily an admission that the claims were frivolous. As the district court correctly pointed out, there are many potential reasons and tactics behind such a decision. We decline to speculate about Cobb's motivation here.

Thus, the district court did not abuse its discretion by declining to award attorneys' fees to Tinker and Attorney Defendants under the Oklahoma statutes.

## B.    Federal Statutes

Tinker and Attorney Defendants also asserted that they were entitled to attorneys' fees under 15 U.S.C. § 1692k(a)(3); 42 U.S.C. § 1988; and 28 U.S.C. § 1927. Under § 1692k(a)(3), a court may award attorneys' fees if a FDCPA claim was "brought in bad faith and for the purpose of harassment." Under § 1988, a court may, "in its discretion," award attorneys' fees to a prevailing party in civil rights cases. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And under § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to pay attorneys' fees. But awarding fees under § 1927 should be reserved only for "instances evidencing serious and standard disregard for the orderly process of justice." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (citation omitted).

Tinker and Attorney Defendants argued that Cobb's claims were meritless because they were barred by the statute of limitations. So, as they see it, Cobb must have sued in bad faith, to harass them, and to multiply the proceedings in this case.

The district court rejected that argument. Indeed, it found that Cobb hadn't brought his claims in bad faith or for harassment purposes. It also concluded that Cobb's statute-of-limitations arguments were rational and made in good faith. And finally, it determined that Cobb's attorneys' actions did not satisfy the demanding standard required to impose fees under § 1927. Once more, we agree with the district court's reasoning. Thus, we conclude that the district court did not abuse its discretion in declining to award attorneys' fees to Tinker or Attorney Defendants.[9]

## CONCLUSION

The district court properly dismissed Cobb's abuse-of-process and FDCPA claims as barred by the statute of limitations. It also did not abuse its discretion by declining to award attorneys' fees to Tinker and Attorney Defendants. We affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[9] Though the district court did not address in its order whether attorneys' fees would have been warranted under § 1988, that statute is inapplicable because this case didn't involve civil-rights claims.