EDWARDS v. INVESTRUST



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:EDWARDS v. INVESTRUST

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 EDWARDS v. INVESTRUST
2021 OK CIV APP 16
Case Number: 118742; Comp. w/118214
Decided: 03/24/2021
Mandate Issued: 04/21/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 16, __ P.3d __

 

PATRICIA BOWERS EDWARDS, an individual, Plaintiff/Counterclaim Defendant/Appellant,
v.
INVESTRUST, as Trustee of the Patricia Bowers Edwards Trust, Defendant/Counterclaimant
and
Third-Party Plaintiff/Appellee, OKLAHOMA CITY COMMUNITY FOUNDATION, INC., Third-Party Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD C. OGDEN, TRIAL JUDGE

AFFIRMED

Babette Patton, BREATHWIT & PATTON, P.C., Oklahoma City, Oklahoma, for Appellant

Sheldon B. Swan, LAW OFFICES OF SHELDON B. SWAN, PLLC, Edmond, Oklahoma, for Appellee

DEBORAH B. BARNES, JUDGE:

¶1 In January 2020, Patricia Bowers Edwards filed a "Motion to Deny InvesTrust's Payment of Attorney's Fees from the Patricia Bowers Edwards Trust." Ms. Edwards now appeals from the trial court's Judgment, filed in March 2020, denying her motion and granting, instead, InvesTrust's "Counter Motion for Summary Judgment."[1] Based on our review, we affirm.

BACKGROUND

¶2 Ms. Edwards initiated this action by filing a petition in September 2019 seeking to remove InvesTrust as trustee and appoint a successor trustee. Ms. Edwards sought the appointment of Jackson Hole Trust Company

because (1) the relationship between [Ms. Edwards] and InvesTrust has deteriorated and [Ms. Edwards] no longer has trust or confidence in InvesTrust; (2) there is no state income tax in Wyoming; (3) [Ms. Edwards] has met with the investment advisor that will be managing her trust investments and approves of the plan he has set out and has faith and confidence in his investment skill and knowledge.

She further asserted that Jackson Hole Trust Company meets the requirements set forth in the Trust regarding a successor trustee.

¶3 In her Statement of the Case filed on appeal, Ms. Edwards asserts that although the Trust "unequivocally grants [her] the right to remove" the trustee and appoint a successor trustee, InvesTrust "would not agree to step down, forcing [her] to file suit for its removal . . . ." The Trust provides, in pertinent part, as follows:

Removal or Replacement of Corporate Trustee. Notwithstanding anything else contained herein, the primary beneficiary of each trust created hereunder [i.e., Ms. Edwards] shall have the right at any time to remove the corporate Trustee by giving it thirty (30) days' written notice, provided that said primary beneficiary shall appoint a successor Trustee which in all events shall be either a successor trustee named herein, or a corporation having trust powers, capital and surplus of at least $2,500,000, and of which no beneficiary hereof owns at the time of such appointment in excess of 5% of the value of the stock of such corporate trustee. . . .

¶4 InvesTrust filed an "Answer and Counterclaim" in response to Ms. Edwards' petition. In response to Ms. Edwards' assertion in her petition that she "seeks to remove InvesTrust as trustee [and] appoint Jackson Hole Trust Company as successor trustee," InvesTrust stated it

admits that [Ms. Edwards] seeks to remove [InvesTrust] as trustee and appoint Jackson Hole Trust Company as trustee to change the situs of the Trust to Wyoming pursuant to [the above-quoted portion] of the Trust, although there is no provision for change of situs in [the Trust] and Oklahoma does not have non-judicial settlement or common law decanting and Wyoming does. If [the Trust] is moved to Wyoming, the trustee can decant the trust into a new trust for the benefit of [Ms. Edwards]. One can migrate a trust to Wyoming and ask a court to reform it without mandating continuing supervision by Wyoming courts. . . .

¶5 InvesTrust requested

that, in the event the Court removes [InvesTrust] as trustee and appoints Jackson Hole Trust Company as trustee, (i) the Court approve of the change of situs of [the Trust] to Wyoming pursuant to [the above-quoted portion] of that trust, (ii) determine that [InvesTrust's] lack of opposition to the change of situs of [the Trust] will not in any way affect any requirements for change of situs of any other trust in which [Ms. Edwards] has an interest, whether vested or contingent, and (iii) that [InvesTrust] have its costs herein expended, including a reasonable attorney's fee.

¶6 In the counterclaim portion of this pleading, InvesTrust stated that, in response to being informed by Ms. Edwards' counsel regarding the removal of InvesTrust as trustee and the appointment of Jackson Hole Trust Company as successor trustee, InvesTrust had twice "advised [Ms. Edwards'] counsel that the prudent course of action is for [Ms. Edwards] to request court approval of the change of situs." InvesTrust stated that Ms. Edwards then filed the present action "to remove [InvesTrust] as trustee and appoint Jackson Hole Trust Company as trustee of [the Trust], but did not petition the court to approve the change [of] situs of the trust to Wyoming." InvesTrust reasserted it "does not oppose the change of situs of [the Trust] to Wyoming, provided the Court approves the change of situs and determines that [InvesTrust's] lack of opposition to the change of situs of [the Trust] will not in any way affect any requirements for change of situs of any other trust in which [Ms. Edwards] has an interest, whether vested or contingent."

¶7 As stated by Ms. Edwards, "InvesTrust then filed a so-called third-party petition to bring in Oklahoma City Community Foundation, [Inc.,] the contingent beneficiary, which is not a necessary party." InvesTrust asserted, however, that although the Oklahoma City Community Foundation is not a necessary party under 60 O.S. 2011 § 175.23 of the Oklahoma Trust Act, "[s]ince [Ms. Edwards'] request necessarily involves a change of situs," the "[c]ommon law applies, and pursuant thereto, the necessary parties to this action to change trust situs consist of (i) InvesTrust, as Trustee . . . , (ii) [Ms. Edwards], as current life beneficiary of [the Trust], and (iii) the [Oklahoma City Community Foundation], as remainder beneficiary of [the Trust] if [Ms. Edwards'] present interest in the trust terminated on the date the Petition was filed."[2]

¶8 The parties ultimately entered into an "Agreed Judgment," filed in January 2020, which states that InvesTrust has agreed to resign as trustee, and that Ms. Edwards and the Oklahoma City Community Foundation have agreed to accept this resignation and appoint Jackson Hole Trust Company as successor trustee. The Agreed Judgment states that "Jackson Hole Trust Company is experienced in trust administration, duly qualified and able to administer this Oklahoma trust," and that, "[u]pon transfer of all of the assets of the trust, InvesTrust is released and discharged from its duties, relieved from any further obligation to render an account of the trust, and is released and discharged from all claims or liabilities with respect to the administration of the trust." The Agreed Judgment further states, among other things, that "[t]he Court approves the change of situs of [the Trust] to Wyoming pursuant to [the portion of the Trust granting the beneficiary the power to remove the trustee and appoint a successor trustee]."

¶9 However, regarding the issue of the payment of InvesTrust's attorney fees from the principal of the Trust, the Agreed Judgment states:

It is InvesTrust's position that attorney's fees, costs, and expenses of this litigation incurred by InvesTrust have been incurred for the benefit of and protection of the trust and are properly chargeable against the principal of [the Trust]. Edwards disputes that position. For this reason, this case shall proceed for determination of InvesTrust's entitlement to attorney's fees, costs, and expenses of this litigation incurred by InvesTrust.

¶10 Ms. Edwards subsequently filed her "Motion to Deny InvesTrust's Payment of Attorney's Fees from the Patricia Bowers Edwards Trust," asserting that 60 O.S. 2011 § 175.24(A)(9) of the Oklahoma Trust Act, "upon which InvesTrust relies for recovery of its attorney's fees," provides that a trustee is authorized "[t]o employ attorneys, accountants, agents, and brokers reasonably necessary in the administration of the trust estate[.]" (Emphasis added.) She further pointed out that the Trust provides, in part, in Article V -- entitled "Powers of Trustee" -- as follows: "Accountants, Attorneys, Investment Advisors and Other Agents. The Trustee is authorized to employ attorneys, accountants, investment advisors, specialists and such other agents as the Trustee may deem necessary or desirable." According to Ms. Edwards, the attorney fees expended by InvesTrust in the present judicial proceeding -- a proceeding in which Ms. Edwards was attempting to exercise her "right at any time to remove the corporate Trustee," as set forth in the Trust -- do not constitute the expenditure of fees by a trustee in the administration of the trust estate under either § 175.24(A)(9) or the Trust.

¶11 Ms. Edwards asserted that, "[b]y contrast," 60 O.S. 2011 § 175.57(D) provides: "In a judicial proceeding involving a trust, the court may in its discretion, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust which is the subject of the controversy." (Emphasis added.) According to Ms. Edwards, "the threshold question is whether this action comes under the purview of Section 175.24(A)(9) or 175.57(D)," and § 175.57(D) should be found to apply. She further asserted that, under this provision, "justice and equity do not require [Ms. Edwards] to pay InvesTrust's attorney's fees."

¶12 As set forth above, InvesTrust filed a response and "Counter Motion for Summary Judgment," which the trial court granted in its March 2020 Judgment following a hearing.[3] The Judgment states:

[Ms. Edwards] disputes entitlement to attorney fees based on the interpretation of the Trust and statute, but raises no objection to the hourly rate or amount of attorney fees paid to InvesTrust from the Trust.[4]

 
The Court . . . finds that the uncontroverted facts show that (1) the Trust instrument permits InvesTrust to pay its attorney fees without advance authorization from a court; and (2) 60 O.S. § 175.24(A) further permits such payment of attorney fees.

Based upon the aforementioned facts to which no genuine issue exists, the Court finds that InvesTrust is entitled to judgment against [Ms. Edwards], as a matter of law on [InvesTrust's] Counter Motion.

¶13 From the March 2020 Judgment denying her "Motion to Deny InvesTrust's Payment of Attorney's Fees from the Patricia Bowers Edwards Trust" and granting, instead, InvesTrust's "Counter Motion for Summary Judgment," Ms. Edwards appeals.

STANDARD OF REVIEW

¶14 During the pendency of this appeal, InvesTrust filed a "Motion to Compel Compliance with Rule 1.36," asserting, among other things, that "the Petition in Error filed herein by [Ms. Edwards] fails to indicate that the appeal is from an order granting summary judgment," and requesting that the Oklahoma Supreme Court order Ms. Edwards to comply with the accelerated procedure applicable to appeals from orders granting summary judgment. Ms. Edwards filed a response in which she disputed that this appeal is an appeal from a summary judgment proceeding. However, the Supreme Court, in an order filed in April 2020, determined that "[InvesTrust's] motion to compel compliance with Rule 1.36 is granted."[5]

¶15 The standard of review applicable to an order granting summary judgment is de novo, and the Oklahoma Supreme Court has explained as follows:

Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is de novo.

Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051 (citation omitted). "Similarly, statutory construction presents a question of law which is subject to de novo review," and "[w]hether a party is entitled to an award of attorney fees presents a question of law subject to de novo review, that is, without deference." Act South, LLC v. Reco Elec. Co., 2013 OK CIV APP 23, ¶ 10, 299 P.3d 505 (internal quotation marks omitted) (citations omitted). Finally, "[t]he interpretation of the language of a trust instrument is a question of law for the court." Matter of Home-Stake Prod. Co. Deferred Comp. Tr., 1979 OK 81, ¶ 8, 598 P.2d 1193 (citation omitted).

ANALYSIS

¶16 InvesTrust cites to the Corpus Juris Secundum in support of its argument that it was authorized to employ attorneys in the present litigation and to pay their fees directly from the Trust estate. InvesTrust cites to 90A C.J.S. Trusts § 403, which provides, in part, as follows:

The trustee may employ attorneys as necessary for a trustee's administration of a trust, or execution of the trust, or when litigation is necessary to defend or preserve the trust; reasonable and necessary attorney's fees are ordinarily a charge against the trust for which the trustee is entitled to reimbursement.

The trustee may employ attorneys as necessary for a trustee's administration of a trust, or execution of the trust, or when litigation is necessary to defend the trust or to preserve the trust. The trustee's entitlement to the use of trust assets to retain and compensate attorneys may be expanded by the terms of trust instrument, or may [be] constrained by the terms of the trust agreement . . . .

(Footnotes omitted.) InvesTrust further points out that the Trust provides, as quoted, in part, above:

The Trustee is authorized to employ attorneys . . . as the Trustee may deem necessary or desirable. . . . The Trustee may pay reasonable compensation for the services of any agents hired hereunder and may charge the same to principal or income, as the Trustee determines is appropriate, depending upon the nature and character of the services rendered.

¶17 InvesTrust asserts the present litigation was necessary for the preservation or administration of the Trust. Although InvesTrust agrees Ms. Edwards has the power under the Trust to remove the trustee, InvesTrust nevertheless insists the "prudent course of action," given the location of the selected successor trustee in Wyoming, was for Ms. Edwards to seek court approval of the "change of situs."

¶18 InvesTrust also cites to Bogert's Law of Trusts and Trustees (Bogert's), in which it is explained that "[t]he settlor may provide in the trust instrument for removal of the trustee" and, as here, "[i]n the trust instrument, the settlor may give the power to remove a trustee to" a beneficiary. G. Bogert, G. Bogert, & A. Hess, Law of Trusts and Trustees § 520 (June 2020 Update).[6] However, Bogert's further explains as follows:

The terms of the trust will set out the procedure to follow for removal, and the requirements in the trust instrument must be followed for the removal to be effective. The trust instrument may permit removal with or without cause. The trust instrument will typically not require approval of a court, but a court acting in equity can review the removal of a trustee to prevent an abuse of the power and to protect the interests of the beneficiaries. The court will not address whether there was cause for removal, unless cause is required in the trust instrument, and instead must determine whether the procedure outlined in the trust instrument was followed and whether the removal harmed the interests of any beneficiaries.

Id. (footnotes omitted). In support of this explanation, several cases are cited in which the courts reviewed and, in some instances, rejected a beneficiary's attempt to exercise the remove-and-replace power granted that beneficiary in the trust. For example, it is noted in Bogert's that in In re Hudson's Trust, 29 A.D.2d 145 (N.Y. App. Div. 1968),

[a]lthough beneficiary, the surviving spouse of the settlor, was given the power to remove the trustee and appoint a successor trustee, the court refused to allow the surviving spouse to remove the New York trustee and appoint a Florida bank as successor trustee. The beneficiary could not use the power to remove-and-replace if the result was to change the situs of the trust to Florida. The settlor intended the trust to be administered in New York, none of the remainder beneficiaries resided in Florida, and there was no showing that the administration of the trust would be benefited by the change in situs.

Id. § 520 at n.14. As further noted in Bogert's, various other courts have similarly concluded that "[a] settlor may vest in the beneficiary the power to remove the trustee, and the court will respect a removal by the beneficiary unless the court is satisfied that the removal and substitution are not for the benefit of the trust"; that, "[w]here a settlor confers on a beneficiary the power to remove the trustee and substitute a responsible trust company, equity will not approve the substitution if it is clearly not for the good of the trust"; and that "[t]he supervisory authority of the court is broad enough to protect the beneficiaries by refusing to approve a trustee selected by a beneficiary given the power to remove and replace the trustee, if the selected trustee is" found by the court to be "unfit to administer the trust[.]" Id. (citations omitted).

¶19 Importantly, Ms. Edwards admits the appointment of Jackson Hole Trust Company as the successor trustee "would result in changing the situs of [the Trust] to Wyoming." Moreover, although the Trust unambiguously grants to Ms. Edwards the remove-and-replace power with regard to trustees, it is silent regarding the power to change the situs of the Trust. Some courts have concluded that where there is neither an express provision for a change of situs or a necessary implication of an intent that the situs could be changed, a court can review the exercise of the power. See, e.g., Bankers Tr. Co. v. Hudson, 245 N.E.2d 405, 405 (N.Y. 1969) ("[I]n absence of an express or implied provision for change of situs of trust," change of situs is "not permissible except on showing that [inter alia] change would benefit administration of trust[.]").

¶20 In the present case, the Trust provides that, "[n]otwithstanding anything else contained herein," Ms. Edwards "shall have the right at any time to remove the corporate Trustee by giving it thirty (30) days' written notice," and the trial court ultimately approved of the change of situs in the Agreed Judgment, finding that "[t]he Court approves the change of situs of [the Trust] to Wyoming . . . ." Nevertheless, the Trust is silent regarding the power to change the situs and, moreover, the Trust, among other things, refers specifically to the Oklahoma Trust Act and names the Oklahoma City Community Foundation -- a not-for-profit corporation incorporated under the laws of the State of Oklahoma, with its principal place of business located in Oklahoma County -- as the sole remainder beneficiary. Thus, there is neither an express provision for a change of situs or a necessary implication of an intent that the situs could be changed. Although, as the authorities discussed above demonstrate, this does not mean that the situs cannot be changed, we are nevertheless persuaded that under the circumstances presented InvesTrust was acting within the ambit of its powers and duties as trustee in insisting upon court approval of the change of situs.

¶21 That is, in response to two attempts by counsel for Ms. Edwards to give notice to InvesTrust that she was exercising her remove-and-replace power, InvesTrust responded on both occasions that "the prudent course of action" would be for Ms. Edwards to "file a petition or petitions seeking court approval for change of situs . . . ." InvesTrust's actions resulted in Ms. Edwards initiating the present action. Although, as InvesTrust agrees, Ms. Edwards, as the beneficiary, had the power to remove the trustee and select a successor trustee, we agree with InvesTrust that it was not acting beyond the scope of its broad administrative powers, including its power to protect and preserve the trust property,[7] in effectively demanding court approval of the change of situs. Although a trustee's responsibilities and powers are not without limits,[8] we conclude InvesTrust's concern regarding the change of situs to Wyoming, and its actions taken in this regard, properly fell within its powers as trustee.[9] Thus, as set forth in the Trust, InvesTrust was properly "authorized to employ attorneys . . . as the Trustee may deem necessary or desirable[.]"

¶22 Moreover, consistent with the language of the Trust, the Oklahoma Trust Act provides that a trustee is authorized "[t]o employ attorneys, accountants, agents, and brokers reasonably necessary in the administration of the trust estate[.]" 60 O.S. 2011 § 175.24(A)(9). Although we must "strictly construe[] any authority for fees and expenses," Atwood, 2001 OK CIV APP 48, ¶ 43 (citations omitted), we conclude the attorneys for InvesTrust in the current litigation have properly been employed as a result of InvesTrust undertaking its responsibilities as trustee. Consequently, we conclude the trial court properly determined in its March 2020 Judgment that "the Trust instrument permits InvesTrust to pay its attorney fees without advance authorization from a court," and that "60 O.S. § 175.24(A) further permits such payment of attorney fees."[10]

CONCLUSION

 

¶23 We affirm the trial court's March 2020 Judgment denying Ms. Edwards' "Motion to Deny InvesTrust's Payment of Attorney's Fees from the Patricia Bowers Edwards Trust" and granting, instead, InvesTrust's "Counter Motion for Summary Judgment."

¶24 AFFIRMED.

WISEMAN, P.J., and RAPP, J. (sitting by designation), concur.

FOOTNOTES

[1] This appeal and Case No. 118,214 were made companion cases by order of the Oklahoma Supreme Court.

[2] (Emphasis omitted.) InvesTrust also filed a response to Ms. Edwards' filing of a motion to strike InvesTrust's third-party petition.

[3] Ms. Edwards' also filed a reply to InvesTrust's response and objection to its counter motion, and InvesTrust filed a reply to Ms. Edwards' objection.

[4] Although not relevant to the legal issues raised on appeal, the amount of attorney fees at issue is approximately $15,000.

[5] As one consequence, this appeal proceeds without appellate briefing.

[6] InvesTrust quotes only the following language from Bogert's: "An effort to invalidate or attack a trust may be made in a number of different ways by one or more parties," and "[e]quity imposes upon the trustee the duty of defending the integrity of the trust, if he has reasonable ground for believing that the attack is unjustified or if he is reasonably in doubt on that subject." Id. § 581. However, § 520 appears to be of greater relevance to the issue of the power to change the situs of a trust.

[7] The trustee's responsibilities under the Trust primarily revolve around the management and investment of the trust property. The Trust states, for example, that "the Settlor directs that the Trustee, consistent with prudent business and investment practices, cause the assets of the trusts to the extent possible to be invested and reinvested in a manner which will maintain and preserve principal and avoid undue and unnecessary risks," and the Trust grants the trustee "General Investment and Management Powers" to, among other things, "sell, exchange, alter, mortgage, pledge, invest, improve, or otherwise dispose of the investments of any trust estate hereunder" and "engage in any business or investment activity permitted by law[.]" The Trust also authorizes the trustee to, inter alia, "lend or borrow upon such terms and conditions as the Trustee shall deem fair or equitable, and to sell or purchase, at the fair market value as determined by the Trustee, any property to or from the estate of the Settlor," to "improve, repair, lease, grant options on, or deal in any like manner with any real estate comprising a part of the trust estate," and to establish reserves for such things as taxes, assessments, insurance premiums, and repairs. Moreover, in Article V of the Trust, the Settlor granted "broad and comprehensive powers to the Trustee to enable it to carry on the business and affairs of the trusts . . . without undue limitations and inconveniences." In order to carry out these duties, section 5.14 authorizes the trustee to employ "attorneys, accountants, investment advisors, specialists and such other agents[.]" See also Black's Law Dictionary (11th ed. 2019) ("Generally, a trustee's duties are," among others, "to protect and preserve the trust property, and to ensure that it is employed solely for the beneficiary, in accordance with the directions contained in the trust instrument.").

[8] "[T]he discretion granted trustees is not without limits." Robinson v. Kirbie, 1990 OK CIV APP 45, ¶ 8, 793 P.2d 315 (citation omitted). For example, "[a] trust instrument may enlarge or restrict the statutory powers of the Trustee," Atwood v. Atwood, 2001 OK CIV APP 48, ¶ 16, 25 P.3d 936 (citations omitted), and "the trustee may not . . . refuse to perform some trust directive," id. ¶ 19. Moreover, it is a "basic premise that where there is no ambiguity and the language of a declaration of trust is clear and plainly susceptible of only one construction, the plain provisions of the trust instrument must determine its construction," and "trust instruments generally are to be construed in favor of the beneficiaries thereof[.]" Matter of Home-Stake Prod. Co. Deferred Comp. Tr., 1979 OK 81, ¶ 8 (citation omitted).

[9] InvesTrust quotes the following from the comments to the Restatement (Third) of Trusts § 88: "The trustee can properly incur expenses for reasonable counsel fees and other costs in bringing, defending, or settling litigation as appropriate to proper administration or performance of the trustee's duties." Restatement (Third) of Trusts § 88 cmt. d (2007).

[10] Ms. Edwards argues that, instead, 60 O.S. 2011 § 175.57(D) should be found to apply, but that, given the factors a court must consider under § 175.57(D), "justice and equity do not require [her] to pay InvesTrust's attorney's fees." However, "Section 175.57(D) was enacted in 1999 as a part of legislation dealing with trustees and their actions," and "[t]he context of Section 175.57 . . . relates to the trustee and violations of trust." Atwood, ¶ 44. Indeed, § 175.57 is entitled "Breach of Trust," and all of its provisions, including § 175.57(A), (B) and (C), which precede § 175.57(D), pertain to breach of trust proceedings against a trustee. Although § 175.57(D) itself refers, without specificity, to "a judicial proceeding involving a trust," in this Court's view, and consistent with our duty to strictly construe any authority for fees and expenses, § 175.57(D) refers, like all surrounding provisions in § 175.57, to judicial proceedings involving a breach of trust of some kind by a trustee. This conclusion is supported by the Court's analysis in Atwood, for although the Atwood Court concluded § 175.57(D) "provides a statutory exception to the American Rule," Atwood, ¶ 46, in that case "[t]he gist of [the beneficiaries'] contention [was] that Trustee breached his duties by failing to diversify and had he done so the Trust's value would have been substantially higher," id. ¶ 6. The Court described this as a "claim of breach of trust duty by a failure to diversify." Id. ¶ 14. The present case, however, does not involve any claim of a breach of trust asserted against a trustee and, thus, § 175.57(D) does not apply.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1990 OK CIV APP 45, 793 P.2d 315, 61 OBJ 1813, Robinson v. Kirbie
Discussed
 2001 OK CIV APP 48, 25 P.3d 936, 72 OBJ 1530, ATWOOD v. ATWOOD
Discussed at Length
 2013 OK CIV APP 23, 299 P.3d 505, ACT SOUTH, LLC v. RECO ELECTRIC CO.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1979 OK 81, 598 P.2d 1193, MATTER OF HOME-STAKE PRODUCTION CO., ETC.
Discussed at Length
Title 60. Property
 Cite
Name
Level

 60 O.S. 175.57, Breach of Trust
Discussed
 60 O.S. 175.23, District Court - Jurisdiction to Construe Instruments
Cited
 60 O.S. 175.24, Powers of Trustees - Bond
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA